UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| George Stewart, on behalf of himself and others similarly situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 5:23-cv-00007-H |
| Texas Tech University Health Sciences Center, et al. | § § § § | |
| Defendants. | § § | |

**TEXAS TECH DEFENDANTS' RULE 12(b)(1) AND 12(b)(6) MOTION TO DISMISS**

TO THE HONORABLE U.S. DISTRICT JUDGE JAMES WESLEY HENDRIX:

Defendants Texas Tech University Health Sciences Center ("TTUHSC"), Lori Rice-Spearman, Steven Lee Berk, Lindsay Johnson, Hollie Stanton, and Jeri Moravcik (collectively, the "Texas Tech Defendants") jointly file this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff's claims against the Texas Tech Defendants fail for lack of standing and fail to state a viable claim as a matter of law. Accordingly, the Court should dismiss them.

i

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... ii
TABLE OF AUTHORITIES ............................................................................................... iii
INTRODUCTION ................................................................................................................ 1
BACKGROUND .................................................................................................................. 1
STANDARD OF REVIEW .................................................................................................. 3
ARGUMENTS & AUTHORITIES ...................................................................................... 4
   I.    Stewart lacks standing to sue the Texas Tech Defendants ............................... 4
       A.    Stewart's alleged injuries are not redressable by any relief that could be ordered against the Texas Tech Defendants ............................................ 5
       B.    Stewart cannot show a cognizable injury against the Texas Tech Defendants ............................................................................................... 7
       C.    Stewart cannot trace any alleged injury to the Texas Tech Defendants . 9
   II.   Stewart has failed to plead a legally cognizable claim against the Texas Tech Defendants ..................................................................................................... 11
CONCLUSION & PRAYER ............................................................................................. 13
CERTIFICATE OF SERVICE .......................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................. 3, 4, 11, 12

*Cell Sci. Sys. Corp. v. La. Health Serv.*,
  804 F. App'x 260 (5th Cir. 2020) (per curiam) ......................................................... 3

*Freedom From Religion Found., Inc. v. Abbott*,
  58 F.4th 824 (5th Cir. 2023) ..................................................................................... 6

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
  594 F.3d 383 (5th Cir. 2010) .................................................................................... 4

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ...................................................................................... 5, 9, 10

*Paterson v. Weinberger*,
  644 F.2d 521 (5th Cir. 1981) .................................................................................... 3

*Plotkin v. IP Axess Inc.*,
  407 F.3d 690 (5th Cir. 2005) ............................................................................. 4, 12

*Ramming v. United States*,
  281 F.3d 158 (5th Cir. 2001) .................................................................................... 3

*Rodriguez v. Tex. Comm'n of Arts*,
  992 F. Supp. 876 (N.D. Tex. 1998) .......................................................................... 3

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
  143 S. Ct. 2141 (2023) ............................................................................................. 6

*Sullivan v. Leor Energy, LLC*,
  600 F.3d 542 (5th Cir. 2010) .................................................................................... 4

*Walker v. Beaumont Indep. Sch. Dist.*,
  938 F.3d 724 (5th Cir. 2019) .................................................................................... 4

**Statutes**

42 U.S.C. § 1981 ............................................................................................................. 2

Tex. Educ. Code Ann. § 51.842(a) ...................................................................... 8, 9, 12

Tex. Educ. Code Ann. § 51.842(b) ...................................................................... 8, 9, 12

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ............................................................. i, 3, 10

Federal Rule of Civil Procedure 12(b)(6) ....................................................... i, 3, 11, 12

Federal Rule of Evidence 201................................................................................... 4

**INTRODUCTION**

Plaintiff George Stewart ("Stewart") claims that the Texas Tech Defendants violate various statutory and constitutional provisions by allegedly using race and sex as factors in their admission decisions. Stewart fails to allege any specific facts that could support such a conclusory allegation. Because Stewart's allegations do not identify any policy or practice of the Texas Tech Defendants that show they use race or sex in making admission decisions, there is no relief this Court could grant on Stewart's claims. As discussed in more detail below, Stewart lacks standing to sue the Texas Tech Defendants, and he has also failed to state a claim against those Defendants. This Court should therefore dismiss Stewart's claims against the Texas Tech Defendants in their entirety.

**BACKGROUND**

Admittance to TTUHSC's School of Medicine is highly competitive. Only 180 applicants are typically admitted each year. App. 1 ¶ 2. Stewart first applied to TTUHSC's School of Medicine in the 2020–2021 application cycle. *Id.* However, Stewart did not complete the secondary application required from all applicants, and therefore he was not considered for an interview. *Id.* Stewart re-applied to TTUHSC's School of Medicine in the 2021–2022 cycle. *Id.* In that same application cycle, a total of 5,252 applicants applied to TTUHSC's School of Medicine. *Id.* TTUHSC granted personal interviews to a little over 900 of those applicants, and Stewart was one of the applicants selected for interview. *Id.* Ultimately, TTUHSC

1

admitted only 180 applicants that year. *Id.* Stewart was one of the 5,072 applicants not selected for admission. *Id.*

Stewart has now sued the Texas Tech Defendants (as well as numerous other graduate schools in Texas, represented by other counsel). Stewart alleges that the Texas Tech Defendants are "violating Title VI and Title IX by discriminating in favor of female, black, and Hispanic applicants for admission and against whites, Asians, and men." ECF No. 1 at 18 ¶ 60. Stewart claims that this alleged conduct violates not only Title VI and Title IX, but also 42 U.S.C. § 1981 and the Equal Protection Clause of the Fourteenth Amendment. *See id.* at 18–23.

Stewart does not allege that TTUHSC or any of the other Texas Tech Defendants had any policy that permitted consideration of race or sex in admission decisions. Further, Stewart does not allege that any of the Texas Tech Defendants or any other specific individual at TTUHSC considered his own race or sex in evaluating his medical school application. Instead, Stewart relies solely on statistical data to infer the discrimination he alleges. His only factual allegation against the Texas Tech Defendants is that according to certain data, "blacks and Hispanics are admitted with much lower MCAT scores than whites or Asians, and . . . women are admitted with lower MCAT scores than men." *Id.* at 11 ¶ 41. As discussed below, this is completely insufficient to show standing or to state a viable claim against the Texas Tech Defendants.

2

**STANDARD OF REVIEW**

**Rule 12(b)(1):**

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move for dismissal where a court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A plaintiff has the burden to establish subject matter jurisdiction. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Rodriguez v. Tex. Comm'n of Arts*, 992 F. Supp. 876, 879 (N.D. Tex. 1998). Where, as here, a party files a motion to dismiss under both Rule 12(b)(1) and Rule 12(b)(6), "the court should consider the Rule 12(b)(1) jurisdictional attack" first. *Ramming*, 281 F.3d at 161.

Under Rule 12(b)(1), a defendant may challenge a court's subject matter jurisdiction through a "facial attack" or a "factual attack." *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Where, as here, a defendant brings a "facial attack," the Court considers whether a plaintiff's allegations are legally sufficient to establish subject matter jurisdiction. *Cell Sci. Sys. Corp. v. La. Health Serv.*, 804 F. App'x 260, 263 (5th Cir. 2020) (per curiam).

**Rule 12(b)(6):**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal where a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v.*

3

*Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the Court must accept all factual allegations as true, the Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Iqbal*, 556 U.S. at 679.

When reviewing a motion to dismiss for failure to state a claim, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010). The Court may also consider facts subject to judicial notice under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

## ARGUMENT & AUTHORITIES

**I.   Stewart lacks standing to sue the Texas Tech Defendants.**

To have standing to sue in federal court, a plaintiff must establish three elements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as

opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up).  These elements represent "the irreducible constitutional minimum of standing," *id.* at 560, and they are "an indispensable part of the plaintiff's case," *id.* at 561.  Stewart cannot show any of these constitutionally required elements of standing for his claims against the Texas Tech Defendants.

### A. Stewart's alleged injuries are not redressable by any relief that could be ordered against the Texas Tech Defendants.

The third element of standing is perhaps the most foundational in this case. Stewart has failed to allege any facts showing how it is "likely, as opposed to merely speculative, that [his alleged] injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (cleaned up).

Stewart asks this Court to issue an injunction instructing the Texas Tech Defendants not to use race or sex in their admission decisions.  But Stewart has not alleged that any of the Texas Tech Defendants (or anyone else at TTUHSC) specifically considered his race or sex in denying his own medical school application, nor does he allege that anyone at TTUHSC has considered the race or sex of any other applicant.  Thus, he has not alleged any facts showing how his requested injunction would affect his own attempt(s) to gain admittance to TTUHSC's highly competitive School of Medicine.  Further, Stewart fails to allege that TTUHSC has any policy that promotes or even permits consideration of race or sex in admission decisions.  In short, Stewart has failed to allege any facts showing how his requested injunctive

5

relief would result in *any change at all* in how admission decisions are currently made at TTUHSC. If an injunction would not change any policy or practice of the Texas Tech Defendants, by definition it would not redress any injury alleged by Stewart.

Stewart attempts to fill this gaping hole in his pleadings with a lone appeal to statistics. Stewart's sole factual allegation against the Texas Tech Defendants is that according to certain data, "blacks and Hispanics are admitted with much lower MCAT scores than whites or Asians, and . . . women are admitted with lower MCAT scores than men." ECF No. 1 at 11 ¶ 41. As discussed below, this isolated allegation regarding statistical data is legally insufficient to support any inference that the Texas Tech Defendants actually use race or sex as factors in their admission decisions.

Without any allegations (or evidence) showing that TTUHSC or any of its officials are using race or sex in their admission decision-making process, Stewart's requested injunctive relief amounts to no more than a request for this Court to order the Texas Tech Defendants *to continue doing what they are already doing*. That completely fails the redressability requirement.[1] Even more broadly, it fails to show a "live dispute" that satisfies the basic constitutional (and jurisdictional) requirement of an actual case or controversy. *Freedom From Religion Found., Inc. v. Abbott*, 58

---

[1] The Supreme Court recently held that universities may not make admission decisions "on the basis of race." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141, 2176 (2023). It is difficult to perceive what further relief Stewart expects from this Court beyond what the Supreme Court recently provided. Regardless, Stewart has no controversy against the Texas Tech Defendants, since they do not use race in their admission decisions and Stewart has not alleged facts showing otherwise.

6

F.4th 824, 831 (5th Cir. 2023) ("Article III restricts our jurisdiction to cases and controversies. We are therefore permitted to adjudicate only live disputes." (internal quotation marks omitted)). Because Stewart has failed to show redressability or any live controversy between himself and the Texas Tech Defendants, this Court lacks jurisdiction to adjudicate his claims against those Defendants.

**B. Stewart cannot show a cognizable injury against the Texas Tech Defendants.**

Stewart's claims fare no better on the other two elements of constitutional standing. Stewart alleges he suffered injury because the Texas Tech Defendants used race or sex as a factor in deciding to decline his application for admission to medical school. Stewart fails to allege specific facts showing any such concrete or actual injury, beyond mere conjecture.

As mentioned, Stewart relies solely on statistical data to infer an alleged injury. His only factual allegation against the Texas Tech Defendants is that according to certain data, "blacks and Hispanics are admitted with much lower MCAT scores than whites or Asians, and . . . women are admitted with lower MCAT scores than men." ECF No. 1 at 11 ¶ 41. Such an isolated allegation completely fails to show a concrete, actual, non-conjectural injury to Stewart.

Stewart's entire case against the Texas Tech Defendants rests on the critical assumption that a medical school should admit applicants based solely, or even primarily, on their MCAT scores. But that assumption is not plausible on its face because it is contrary to law.

7

The Texas Legislature has expressly set forth no fewer than eleven different factors that Texas graduate schools may consider in making admission decisions. Tex. Educ. Code Ann. § 51.842(a). At least nine of those factors are completely unrelated to the applicant's academic performance. *See id.* Thus, Stewart's conjecture that a medical school must have considered race or sex simply because of disparity in test scores is not a reasonable inference. Indeed, it is nothing more than a speculative, conclusory assertion devoid of any rational or factual support.

More importantly, the statute *expressly prohibits* a Texas medical school from doing exactly what Stewart asks this Court to assume it ought to do. A medical school *may not* make an admission decision based simply on an applicant's MCAT score:

> An applicant's performance on a standardized test may not be used in the admissions or competitive scholarship process for a graduate or professional program as the sole criterion for consideration of the applicant or as the primary criterion to end consideration of the applicant.

*Id.* § 51.842(b). Thus, even if a medical school wanted to simply use MCAT scores as the basis for admitting applicants, it could not legally do so.

In short, Stewart's entire lawsuit rests on the belief that a medical school should generally admit the applicants with the highest MCAT scores, regardless of other factors. Because that would be *illegal*, Stewart's whole theory fails as a matter of law. Stewart's insistence that a mere statistical disparity in test scores supports an inference of race-based or sex-based decision-making is completely unsupported and unsupportable. Because Stewart has not pleaded any facts to support his alleged

8

injury of race-based or sex-based decision-making, he has failed to establish the first element of standing.

### C. Stewart cannot trace any alleged injury to the Texas Tech Defendants.

Finally, Stewart fails to satisfy the traceability requirement. Specifically, he fails to show "a causal connection between the injury and the conduct complained of" because he fails to allege any facts showing how his purported injury is "fairly traceable to the challenged action of" any of the Texas Tech Defendants. *Lujan*, 504 U.S. at 560 (cleaned up).

Again, Stewart's sole attempt to trace his denial from TTUHSC's School of Medicine back to his personal belief that TTUHSC must be using race and sex to make admission decisions is Stewart's isolated allegation that there are disparate test scores between various demographic groups. *See* ECF No. 1 at 11 ¶ 41. As discussed, that allegation is completely insufficient to support an inference of any causal connection.

First, Stewart has not alleged any facts showing how a mere difference in test scores could possibly support an inference that race and sex must have been used to make admission decisions. The Texas Legislature (1) has expressly provided that state medical schools may consider a host of various non-academic factors in their admission decisions, and (2) has directly *prohibited* medical schools from making admission decisions based simply upon MCAT scores. Tex. Educ. Code Ann. § 51.842(a)–(b). Stewart's position appears to be: "If medical schools did not consider race or sex, they would necessarily be admitting the applicants with the highest

9

MCAT scores." The response to that assertion is very simple: "That would be illegal." It is illegal for a Texas medical school to simply take the highest MCAT scorers and admit those individuals to medical school based solely on their superior scores. Medical schools *must* consider other factors and *must not* simply admit the highest scorers based on their MCAT performance.

Second, Stewart has not alleged that any individual at TTUHSC specifically denied *his* application because of his race or sex. Indeed, Stewart does not even allege that any of the individuals from Texas Tech he has named as Defendants were involved in his admission decision at all. Thus, he has failed to trace his denial from medical school to any of the individuals he has sued. More generally, Stewart has not alleged that TTUHSC at large has any policy that promotes or permits consideration of race or sex in admission decisions. Thus, he cannot trace his denial from medical school to any of the Texas Tech Defendants. Because Stewart's allegations simply do not connect any policy or practice of TTUHSC to Stewart's own failure to be admitted to the TTUHSC School of Medicine's highly competitive class, Stewart has not shown traceability.

\* \* \* \* \* \* \*

Stewart has failed to allege sufficient facts to show the basic constitutional requirements of standing. Because Stewart has not carried his burden to establish "the irreducible constitutional minimum of standing," *Lujan*, 504 U.S. at 560, this Court lacks subject matter jurisdiction over Stewart's claims against the Texas Tech Defendants. Accordingly, it should dismiss those claims under Rule 12(b)(1).

10

## II. Stewart has failed to plead a legally cognizable claim against the Texas Tech Defendants.

Even if Stewart could show standing to bring his claims against the Texas Tech Defendants, the Court should still dismiss his claims under Rule 12(b)(6) because they do not meet the federal pleading standard.

Stewart's entire case rests on a single accusation—that Defendants are using race and sex in their admission decisions. But Stewart does not allege that the Texas Tech Defendants had any policy that permitted consideration of race or sex in their admission decisions. Further, Stewart does not allege that any of the Texas Tech Defendants—or anyone else at TTUHSC—considered Stewart's race or sex in evaluating his medical school application.[2] In the absence of any such allegations, Stewart's claim that the Texas Tech Defendants somehow make admission decisions based on the race or sex of any applicant (let alone that they made such a decision based on Stewart's race or sex specifically) is completely speculative. It lacks "facial plausibility" because Stewart has not pleaded any specific "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although Stewart attempts to support his hypothesis by statistical data, that is legally insufficient to show the Texas Tech Defendants use race or sex in admission decisions. Plaintiff alleges that "blacks and Hispanics are admitted with much lower

---

[2] As noted above, Stewart does not allege that any of the five individual Texas Tech Defendants were involved in the decision to reject his application. Thus, at a minimum, he has failed to allege sufficient facts to justify their presence in this lawsuit.

11

MCAT scores than whites or Asians, and that women are admitted with lower MCAT scores than men." ECF No. 1 at 11 ¶ 41. As explained above, alleged disparity in test scores, even if true, cannot reasonably or plausibly support any inference that race or sex are used in making admission decisions. Indeed, it would be illegal for the Texas Tech Defendants to base admission decisions solely on MCAT scores. *See* Tex. Educ. Code Ann. § 51.842(b). Instead, they lawfully and legitimately base their decisions on a multitude of statutory factors, most of which are not related to an applicant's academic record—and none of which include race or sex. *See id.* § 51.842(a).

In sum, Stewart has not alleged any specific facts that plausibly show how any of the Texas Tech Defendants purportedly consider race or sex when making admission decisions. Stewart has certainly not alleged any facts showing how any of the Texas Tech Defendants allegedly considered his own race or sex when deciding to deny his application. Accordingly, Stewart has not carried his burden to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Stewart's claims against the Texas Tech Defendants amount to nothing more than "conclusory allegations, unwarranted factual inferences, or legal conclusions," which are legally insufficient. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). Thus, this Court should dismiss Stewart's claims against the Texas Tech Defendants under Rule 12(b)(6).

## CONCLUSION & PRAYER

For all the foregoing reasons, the Texas Tech Defendants respectfully request this Court to dismiss all of Plaintiff's claims against them. The Texas Tech Defendants also request such further relief to which they may be entitled.

Respectfully submitted.

**ANGELA COLMENERO**
Provisional Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Acting Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Deputy Chief, General Litigation Division
**RYAN KERCHER**
Deputy Chief, General Litigation Division

 */s/ Benjamin S. Walton*
**BENJAMIN S. WALTON**
*Lead Attorney*
Texas Bar No. 24075241
Assistant Attorney General
General Litigation Division
P.O. Box 12548
Austin, Texas 78711
(512) 463-2120 – Phone
(512) 320-0667 – Fax
benjamin.walton@oag.texas.gov

***Counsel for Texas Tech Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2023, a true and correct copy of this document was electronically filed using the Court's CM/ECF system, which will send notification of such filing to the following counsel of record:

Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Gene P. Hamilton
Reed D. Rubinstein
Andrew J. Block
Nicholas R. Barry
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org
reed.rubinstein@aflegal.org
andrew.block@aflegal.org
nicholas.barry@aflegal.org

*Counsel for Plaintiff*

            */s/ Benjamin S. Walton*
            **BENJAMIN S. WALTON**
            Assistant Attorney General