UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| **George Stewart,** | |
| Plaintiff; | |
| v. | Case No. 5:23-cv-0007-H |
| **Texas Tech University Health Sciences Center, et al.,** | |
| Defendants. | |

## THE UNIVERSITY OF TEXAS DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT

Layne E. Kruse
Shauna Johnson Clark
Norton Rose Fulbright US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: 713-651-5151
Telecopier: 713-651-5246
layne.kruse@nortonrosefulbright.com
shauna.clark@nortonrosefulbright.com

*Attorneys for the University of Texas Defendants*

# TABLE OF CONTENTS

**Page**

Table of Authorities ...................................................................................ii

Introduction ............................................................................................ 1

Background and Overview of Complaint.................................................. 3

Argument and Authorities ....................................................................... 5

    1.    Stewart's race-based discrimination claims for declaratory and injunctive relief are moot in light of Regents' Rule 40304's repeal. .................................................................................... 6

    2.    Stewart's claims against the individual UT Defendants fail because they are barred and he has made no allegations that suggest any individual UT Defendant engaged in discrimination or took part in admissions decisions at all. ........................................... 8

    3.    Stewart's conclusory assertions fail to plausibly allege race or gender based discrimination claims under Title VI, Title IX, Section 1981, or the Equal Protection Clause..................................... 13

Conclusion............................................................................................ 15

Certificate of Service............................................................................. 17

i

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Alegria v. Texas,*
 2007 WL 3256586 (S.D. Tex. Nov. 2, 2007) ........................................................ 9

*Alexander v. Sandoval,*
 532 U.S. 275 (2001) ....................................................................................... 13

*Allen v. Denver Pub. Sch. Bd.,*
 928 F.2d 978 (10th Cir. 1991) ....................................................................... 11

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ............................................................................ 6, 11, 13

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007) ................................................................................... 5, 13

*Torch Liquidating Trust* ex rel. *Bridge Assocs. L.L.C. v. Stockstill,*
 561 F.3d 377 (5th Cir. 2009) ........................................................................... 6

*Carter v. Target Corp.,*
 541 F. App'x 413 (5th Cir. 2013) .................................................................... 4

*Chavez. v. Illinois State Police,*
 251 F.3d 612 (7th Cir. 2001) ......................................................................... 14

*Coleman v. Houston Indep. Sch. Dist.,*
 113 F.3d 528 (5th Cir. 1997) ......................................................................... 11

*Daniel v. Univ. of Texas Sw. Med. Ctr.,*
 960 F.3d 253 (5th Cir. 2020) ....................................................................... 5, 8

*In re FEMA Trailer Formaldehyde Prod. Liab. Litig.,*
 668 F.2d 281 (5th Cir. 2012) ........................................................................... 5

*Foley v. Benedict,*
 55 S.W.2d 805 (Tex. 1932)............................................................................... 7

*Freedom from Religion Found., Inc. v. Mack,*
 4 F.4th 306 (5th Cir. 2021)...................................................................... 10, 12

*Freedom from Religion Found. v. Abbott,*
 58 F.4th 824 (5th Cir. 2023)..................................................................... 6, 7, 8

*Gen. Bldg. Contractors Ass'n v. Pennsylvania,*
 458 U.S. 375 (1982) ...................................................................................... 13

ii

*Kentucky v. Graham,*
    473 U.S. 159 (1985) ................................................................. 10

*Gratz v. Bollinger,*
    539 U.S. 244 (2003) ................................................................... 7

*Grutter v. Bollinger,*
    539 U.S. 306 (2003) ................................................................... 7

*Haverkamp v. Linthicum,*
    6 F.4th 662 (5th Cir. 2021) ..................................................... 12

*Hearth, Inc. v. Dep't of Pub. Welfare,*
    617 F.3d 381 (5th Cir. 1980) ..................................................... 9

*Jacquez v. Procunier,*
    801 F.2d 789 (5th Cir. 1986) ................................................... 11

*In re Katrina Canal Breaches Litig.,*
    495 F.3d 191 (5th Cir. 2007) ..................................................... 4

*Lafleur v. Texas Dep't of Health,*
    126 F.3d 758 (5th Cir. 1997) ..................................................... 9

*Lewis v. Ascension Par. Sch. Bd.,*
    806 F.3d 344 (5th Cir. 2015) ................................................... 14

*Lewis v. Univ. of Texas Med. Branch at Galveston,*
    665 F.3d 625 ............................................................................ 8

*Machete Prods., LLC v. Page,*
    809 F.3d 281 (5th Cir. 2015) ..................................................... 5

*Magellan Int'l Corp. v. Salzgitter Handel GmbH,*
    76 F. Supp. 2d 919 (N.D. Ill. 1999) ......................................... 5

*Manley v. Texas Southern Univ.,*
    107 F. Supp. 3d 712 (S.D. Tex. 2015)............................... 11, 14

*Murphy v. Kellar,*
    950 F.2d 290 (5th Cir. 1992) ................................................... 11

*Norris v. Hearst Trust,*
    500 F.3d 454 (5th Cir. 2007) ..................................................... 7

*Oden v. Oktibbeha Cnty., Miss.,*
    246 F.3d 458 (5th Cir. 2001) ..................................................... 9

*Pennhurst State Sch. & Hosp. v. Halderman,*
465 U.S. 89 (1984) ................................................................................ 2

*Pers. Adm'r of Mass. v. Feeney,*
442 U.S. 256 (1979) ............................................................................ 11

*Poloceno v. Dallas Indep. Sch. Dist.,*
826 F. App'x 359 (5th Cir. 2020) ................................................ 13, 14

*Price ex rel. Price v. Louisiana Dep't of Educ.,*
329 F. App'x 559 (5th Cir. 2009) ........................................................ 9

*Priester v. Lowndes Cnty.,*
354 F.3d 414 (5th Cir. 2004) ........................................................ 11, 14

*Ramming v. United States,*
281 F.3d 158 (5th Cir. 2001) ............................................................... 7

*In re S. Recycling, L.L.C.,*
982 F.3d 374 (5th Cir. 2020) ........................................................... 4, 5

*Students for Fair Admissions, Inc. v. Presidents & Fellows of Harvard*
*College and Students for Fair Admissions, Inc. v. Univ. of N.*
*Carolina et al.,*
143 S. Ct. 2141 (2023) ..................................................................... 2, 6

*Taylor v. Johnson,*
257 F.3d 470 (5th Cir. 2001) ............................................................. 14

*Texas Dep't of Hous. & Comm. Affairs v. Inclusive Comms. Proj., Inc.,*
576 U.S. 519 ....................................................................................... 15

*U.S. Navy Seals 1-26 v. Biden,*
72 F.4th 666 (5th Cir. 2023) ............................................................... 8

*Univ. of Houston v. Barth,*
403 S.W.3d 851 (Tex. 2013) ................................................................ 7

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,*
429 U.S. 252 (1977) ............................................................... 11, 13, 14

*Wards Cove Packing Co. v. Atonio,*
490 U.S. 642 (1989) ........................................................................... 14

*Williams v. Bd. of Regents of Univ. Sys. of Georgia,*
477 F.3d 1282 (11th Cir. 2007) ........................................................... 9

*Yarls v. Bunton*,
   905 F.3d 905 (5th Cir. 2018) ..................................................................... 6

*Ex parte Young*,
   209 U.S. 123 (1908) ............................................................................. 2, 12

## RULES AND STATUTES

20 U.S.C. § 1681 *et seq.*.......................................................................*passim*

42 U.S.C. § 1981........................................................................................*passim*

42 U.S.C. § 1983................................................................... 1, 2, 9, 10, 12

42 U.S.C. §§ 2000d *et seq.*.....................................................................*passim*

42 U.S.C. § 2000e-2(k)1 ............................................................................ 14

Fed. R. Civ. P. 12 ........................................................................... 1, 4, 5, 7

Fed. R. Civ. P. 23 ......................................................................................... 1

Tex. Educ. Code § 51.842.......................................................................... 13

Tex. Educ. Code § 65.31.............................................................................. 6

Tex. Gov't Code § 572.002.......................................................................... 8

Defendants Dell Medical School at The University of Texas at Austin, McGovern Medical School at The University of Texas Health Science Center at Houston, the John Sealy School of Medicine at The University of Texas Medical Branch (UTMB) at Galveston, the Long School of Medicine at The University of Texas Health Science Center at San Antonio, The University of Texas Southwestern Medical Center in Dallas, along with the officials at those institutions sued here in their official capacities,[1] move to dismiss George Stewart's complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).[2]

## INTRODUCTION

George Stewart was denied admission to medical school. Stewart is white and believes he was not admitted to medical school because the schools gave preferences to "lesser qualified" women and minority applicants—that is students who had lower standardized test scores, lower grade-point averages, or both. So Stewart sued five medical schools within the UT System, along with 18 administrators at UT System institutions in their official capacity.

Stewart seeks relief under Title VI, 42 U.S.C §§ 2000d *et seq.*, Title IX, 20 U.S.C. § 1681 *et seq.*, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the Fourteenth Amendment's Equal Protection Clause. Claiming that he intends to reapply, Stewart wants to certify a class under Rule 23(b)(2) to seek injunctive and declaratory relief for "all white and Asian men" who stand "able and ready" to apply to medical school. *See* Doc. 1 ¶ 53-54.; *see also id.* ¶ 52 (claiming Stewart's injury "will be redressed by

---

[1] The individual UT Defendants are: Jay Hartzell, Claudia F. Lucchinetti, Steve Smith, Joel A. Daboub, Giuseppe N. Colasurdo, John Hancock, Margaret C. McNeese, Charles P. Mouton, Jeffrey Susman, Ruth E. Levine, Pierre W. Banks, William L. Henrich, Robert A. Hromas, Belinda Chapa Gonzalez, Chiquita Collins, Daniel K. Podolskey, W.P. Andrew Lee, and Leah Schouten.
[2] This motion is filed subject to and simultaneously with the UT Defendants' motion to sever the claims against them from those against the Texas Tech Defendants and transfer the claims against the UT Defendants to U.S. District Court for the Western District of Texas, Austin Division.

a declaratory judgment and injunction that bars defendants from considering or discriminating on account of race or sex when admitted students").[3]

But Stewart's claims fail for many reasons.

To begin with, his claims for declaratory and injunctive relief to prevent the UT Defendants from considering race in admissions are now moot. That is because, in the wake of *Students for Fair Admissions, Inc. v. Presidents & Fellows of Harvard College and Students for Fair Admissions, Inc. v. Univ. of N. Carolina et al.,* 143 S. Ct. 2141 (2023), the UT System's Board of Regents repealed Regents' Rule 40304, which had allowed affirmative action in admissions in some cases.

Stewart's claims should be dismissed for other reasons too. The Eleventh Amendment bars his Section 1981, Section 1983, and Equal Protection claims against the individual defendants, whom he sued only in their official capacities. Nor has Stewart pleaded a claim for injunctive relief against them under *Ex parte Young*, 209 U.S. 123 (1908), because his claims against the individuals do not explain how any of them engaged in any alleged discriminatory practices (and thus he has not pleaded how injunctive or declaratory relief entered against them would redress his claimed injury). His Title VI and Title IX claims can be made only against institutions, not individuals. And, in any case, Stewart's Title VI and Title IX claims should be

---

[3] Stewart's complaint seeks to certify a class for only injunctive relief and his complaint repeatedly refers only to seeking declaratory or injunctive relief including in its claims for relief. *See, e.g.,* Doc. 1 at 3 ("The plaintiff brings this suit to enjoin these discriminatory practices"); *id.* ¶ 62 (stating Stewart "seeks declaratory and injunctive relief that prohibits the defendants from considering or discriminating on account of race and sex" for alleged Title VI and Title IX violations); *id.* ¶ 72 (same for alleged Section 1981 violations); *id.* ¶ 83 (same for alleged Equal Protection Clause violations. On the last page of his complaint, in his demand for relief, Stewart asserts in one line that he wants damages. Stewart does not explain what those damages are or how he has been injured and it is not clear that he is, in fact, seeking damages. In any case, as explained at *pp.* 8-12, even if Stewart were seeking damages for his Section 1983 claims, that relief is barred by the Eleventh Amendment, *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101-02 (1984), and in any event, all his claims, including damages, should be dismissed for failure to state a claim, as explained at *pp.* 13-15.

dismissed because he has not alleged any facts that suggest the UT Medical Schools discriminated based on race or gender.

## BACKGROUND AND OVERVIEW OF COMPLAINT

Stewart is a graduate of The University of Texas at Austin who has twice applied to several public medical schools in Texas. Doc. 1 ¶ 36. Some schools where Stewart applied are part of The University of Texas System ("UT System"), Tex. Educ. Code. § 65.02.[4] Those schools include Dell Medical School at The University of Texas at Austin, McGovern Medical School at The University of Texas Health Science Center at Houston, the John Sealy School of Medicine at The University of Texas Medical Branch at Galveston, the Long School of Medicine at The University of Texas Health Science Center at San Antonio, and the University of Texas Southwestern Medical School in Dallas (together the "UT Medical Schools"). *Id.* Stewart, who is white, was not admitted to any of these schools. *Id.*¶¶ 36, 51.

Stewart believes he was not admitted to the UT Medical Schools because the schools' admissions processes allegedly gave preferences to underrepresented minorities and women over white and Asian men – thus admitting students he contends were less qualified than him. Stewart claims that giving such preferences violates Title VI, Title IX, 42 U.S.C. § 1981, and the Fourteenth Amendment's Equal Protection Clause.

Stewart makes a conclusory assertion that "nearly *every medical school* in the United States" discriminates in admissions based on race and gender, Doc. 1 ¶ 33, but he offers no details about how any of the UT Medical Schools discriminated based on race or gender. Instead, Stewart included in his complaint several graphs showing the range of admitted students' scores on the MCAT – the standardized test

---

[4] The UT System is governed by a board of regents, Tex. Educ. Code. § 65.11, which is "authorized and directed to govern, operate, support, and maintain, each of the component institutions that are now or may hereafter be included in a part of The University of Texas System." *Id.* § 65.31.

taken by prospective medical students – during one of the years he applied, broken down by race for each of the UT Medical Schools. *Id.* ¶¶ 39, 42, 44, 46, and 47. He included similar graphs showing the range of MCAT scores for admitted students broken down by gender for four of the five UT Medical Schools. *Id.* ¶¶ 43, 44, 46, and 47. Although Stewart alleges that he also obtained "grade-point average" information for applicants during this period, he makes no allegations about how admitted students' GPAs correlate with their MCAT scores or even whether they show the same pattern he claims demonstrates discrimination in admissions based on MCAT scores. Nor does Stewart's complaint have allegations about any of the many other considerations that go into deciding whether an applicant should be admitted to medical school (like experience, letters of recommendation, or personal statements) or how any of those factors are weighted or reviewed at any of the UT Medical Schools. Finally, other than for himself, Stewart fails to allege how these scores or other admissions criteria for *admitted* students compare with those of other students who applied to the UT Medical Schools but were not admitted.

Other than the John Sealy School of Medicine at UTMB, Stewart does not point to any UT Medical School's admissions policy that says race is considered in admissions. Doc. 1 ¶ 49. Moreover, the UTMB policy Stewart cites was not in effect when Stewart applied to UTMB and it is no longer in effect. *See* Appendix at 1-2 (Declaration of P. Banks ¶¶ 5-6).[5] And Stewart cites no policy from any UT Medical School saying that gender is considered in admissions.

---

[5] This Court may consider UTMB's updated policy. It bears directly on Stewart's potential injury from the alleged *ongoing* use of racial preferences, should he reapply to medical school, and so is properly before the Court under Rule 12(b)(1). *In re S. Recycling, L.L.C.*, 982 F.3d 374, 379 (5th Cir. 2020). Likewise, it may be considered under Rule 12(b)(6) because its predecessor is "referred to in the complaint[]" and is "central to the plaintiff['s] claims." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The original policy has been superseded, and Stewart cannot prevent the Court's consideration of the operative version by refusing to acknowledge its existence. *See Carter v. Target Corp.*, 541 F. App'x 413, 417 (5th Cir. 2013) (per curiam) (considering plaintiff's EEOC charges under Rule 12(b)(6) because "[t]heir contents are essential to determining" the issues and "[plaintiff's]

Stewart's claims should be dismissed. His race-based discrimination claims for declaratory and injunctive relief are moot given the intervening actions by the UT System's Board of Regents to repeal its former rule under which system institutions had previously been authorized to develop affirmative action policies in limited circumstances. Other claims are barred by the Eleventh Amendment. And even were there jurisdiction over these claims, Stewart has failed to state a claim for either race or gender discrimination.

## ARGUMENT AND AUTHORITIES

Rule 12(b)(1) requires dismissal if a court "lacks the statutory or constitutional power to adjudicate" the claim. *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.2d 281, 286 (5th Cir. 2012). Stewart, as the party invoking subject matter jurisdiction, must show it exists. *Daniel v. Univ. of Texas Sw. Med. Ctr.*, 960 F.3d 253, 256 (5th Cir. 2020). In considering a Rule 12(b)(1) motion, a court assumes the complaint's factual allegations are true, but need not accept legal conclusions "couched as . . . factual allegation[s]." *Id.* (quoting *Machete Prods., LLC v. Page*, 809 F.3d 281, 287 (5th Cir. 2015)). "A district court may dismiss a case under Rule 12(b)(1) based on '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *In re S. Recycling, L.L.C.*, 982 F.3d at 379.

Rule 12(b)(6) requires that a plaintiff plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Those factual allegations must "raise a right to relief above the speculative level." *Id.* at 555. A complaint must also contain "direct allegations or permit properly

---

failure to include them does not allow her complaint to bypass [defendant's] motion to dismiss unexamined"); *cf. Magellan Int'l Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 922–23 (N.D. Ill. 1999) (considering full chain of correspondence under Rule 12(b)(6) despite plaintiff's reference to select messages and noting the "wasteful[ness]" of "uphold[ing] a claim on the false premise created by less than complete documentation").

drawn inferences to support every material point necessary to sustain a recovery." *Torch Liquidating Trust* ex rel. *Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) (internal quotation marks and citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 1. Stewart's race-based discrimination claims for declaratory and injunctive relief are moot in light of Regents' Rule 40304's repeal.

"Article III restrict[s] [federal] jurisdiction to cases and controversies." *Freedom from Religion Found. v. Abbott*, 58 F.4th 824, 831 (5th Cir. 2023). And "[t]here must be a case or controversy through all stages of a case—not just when a suit comes into existence *but throughout its existence*." *Id.* (quoting *Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018)) (emphasis added). Thus, "any set of circumstances that eliminates actual controversy after commencement of a lawsuit renders that action moot." *Id.*

Here, Stewart's race-based discrimination claims for declaratory and injunctive relief are now moot due to actions taken by the UT System's Board of Regents after Stewart sued and following the Supreme Court's June 29, 2023 decision in *Students for Fair Admissions, Inc. v. Presidents & Fellows of Harvard College and Students for Fair Admissions, Inc. v. Univ. of N. Carolina et al.,* 143 S. Ct. 2141 (2023), which held that Harvard University's and the University of North Carolina's consideration of race in admissions to their undergraduate programs violated Title VI and, in the case of UNC, the Equal Protection Clause.

After *Students for Fair Admissions* was decided, the Board of Regents exercised its rulemaking authority, *see* Tex. Educ. Code § 65.31(c), and eliminated the ability of UT System institutions, including the UT Medical Schools, to consider race in admissions. The Regents did so by repealing Regents' Rule 40304, *see* Appendix at 3-4 (Aug. 24, 2023 Regents' Meeting Minutes), which had allowed, but did not require,

UT System institutions to propose affirmative action plans for admissions in certain, narrow circumstances. *See* Appendix at 6 (Regents' Rule 40304).[6]

Even when Rule 40304 was in effect, UT System institutions could propose affirmative action policies only after they found, following "serious good faith consideration, that race-neutral alternatives are inadequate." *Id.* § 2. Any policy also had to follow the standards the Supreme Court announced in *Grutter v. Bollinger*, 539 U.S. 306 (2003) and *Gratz v. Bollinger*, 539 U.S. 244 (2003). *Id.* § 1. And finally, any policy had to be reviewed and approved by the UT System's Office of General Counsel and the Executive Vice Chancellor who oversees the institution before they could be implemented. *Id.* § 4. (Although not named as defendants, the UT System's General Counsel and Executive Chancellor are both in Austin.)

In other words, as a result of Rule 40304's repeal, race can no longer be considered in admissions decisions for UT System institutions, including the UT Medical Schools that are defendants here. That means Stewart's race-based discrimination claims for declaratory and injunctive relief are moot because if he were to reapply to medical school he would not be subject to the policies he claims are discriminatory.

Indeed, courts routinely find that cases are moot when, as here, a statute or rule being challenged in litigation is repealed or amended. *Freedom from Religion Found.,* 58 F.4th at 832 (collecting cases finding disputes moot after repeal or change of legislation or regulation being challenged).[7]

---

[6] In deciding a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court may consider matters outside the pleadings, *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Even under Rule 12(b)(6), consideration of the Regents' Rules would be proper as they are matters of public record. *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

[7] Regents' Rules are accorded the force of *law* in Texas. *See Univ. of Houston v. Barth*, 403 S.W.3d 851, 855 (Tex. 2013) ("[W]e have held that rules enacted by the University of Texas's Board of Regents under the University of Texas's predecessor enabling statute 'are of the same force as would be a like enactment of the Legislature.'") (quoting *Foley v. Benedict*, 55 S.W.2d 805, 808 (Tex. 1932)).

For example, earlier this year, the Fifth Circuit found that a dispute over whether the Texas state government's exclusion of an exhibit from the state capitol violated the First Amendment was moot *after* the state government repealed both the rule and the regulation that created the public forum that the plaintiff was excluded from. *Id.* at 832-33. The Fifth Circuit reached the same conclusion in another recent case challenging the Navy's vaccination requirements *after* Congress passed a statute directing the Secretary of Defense to rescind vaccine mandates in the armed forces and the Navy did so. *U.S. Navy Seals 1-26 v. Biden*, 72 F.4th 666, 672 (5th Cir. 2023).

Those results make sense because "[t]here is no need to enjoin policies that no longer exist." *Id.* Moreover, "mootness is the default rule" in cases (like this one) involving state actors[8] who end challenged practices because state actors are presumed to "act in good faith" when they discontinue a challenged practice. *Freedom from Religion Found.*, 58 F.4th at 833.

Because the Regents have repealed Rule 40304, which previously allowed the UT Medical Schools to develop affirmative action plans, race can no longer be considered in admissions to the UT Medical Schools. Accordingly, Stewart's race-based discrimination claims for declaratory and injunctive relief are moot and should be dismissed.

**2.   Stewart's claims against the individual UT Defendants fail because they are barred and he has made no allegations that suggest any individual UT Defendant engaged in discrimination or took part in admissions decisions at all.**

Each count in Stewart's complaint names the individual UT Defendants and he seeks relief against them under Title VI, Title IX, Section 1981, Section 1983, and

---

[8] The UT Medical Schools are state agencies under Texas law, *see* Tex. Gov't Code § 572.002, and the Fifth Circuit has repeatedly held that the UT System and its institutions are "arms of the state" entitled to Eleventh Amendment immunity. *See, e.g., Daniel*, 960 F.3d at 260 (UT Southwestern entitled to Eleventh Amendment immunity); *Lewis v. Univ. of Texas Med. Branch at Galveston*, 665 F.3d 625, 630 (UTMB entitled to Eleventh Amendment Immunity).

the Fourteenth Amendment's Equal Protection Clause. Each of these claims against the individual defendants fail for several, independent reasons.

To begin with, individuals cannot be held liable under Title VI and Title IX. *See Price ex rel. Price v. Louisiana Dep't of Educ.*, 329 F. App'x 559, 561 (5th Cir. 2009) (affirming dismissal of claims against individual defendants noting that "only public and private *entities* can be held liable under Title VI"); *Alegria v. Texas*, 2007 WL 3256586, at *6 (S.D. Tex. Nov. 2, 2007) ("individuals may not be held liable under Title IX"). And although Stewart says he seeks relief for the alleged violations of Title VI and Title IX under Section 1983, Doc. 1 ¶ 63, he cannot circumvent Title VI's or Title IX's limitations on individual liability by suing under Section 1983. *See Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1300 (11th Cir. 2007) (affirming dismissal of Section 1983 claims against individuals based on Title IX violation because "allow[ing] plaintiffs to use § 1983 in this manner would permit an end run around Title IX's explicit language limiting liability to funding recipients"). As a result, Stewart's Title VI and Title IX claims cannot proceed against the individual UT Defendants.

All Stewart's remaining claims against the individual UT Defendants are, however styled, Section 1983 claims. Section 1983 does not itself provide substantive rights, but allows plaintiffs to sue for violations of federal law by any person acting under color of state law. *See Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 759 (5th Cir. 1997). Put differently, Stewart's claims for violations of Section 1981 and the Equal Protection Clause are only actionable through Section 1983. *See Hearth, Inc. v. Dep't of Pub. Welfare*, 617 F.3d 381, 382-83 (5th Cir. 1980) (holding rights under Fourteenth Amendment must be enforced through Section 1983); *Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 462–64 (5th Cir. 2001) (violation of Section 1981 can be enforced only through Section 1983).

Stewart's Section 1983 claims against the individual UT Defendants fail because he has sued them all in their *official* capacities and Section 1983 claims against state officers in their official capacity are barred by the Eleventh Amendment. *See Freedom from Religion Found., Inc. v. Mack*, 4 F.4th 306, 312 (5th Cir. 2021) ("[T]he Supreme Court's *Will* [*v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)] decision squarely prohibits official capacity claims against state officers under § 1983.").[9] It likewise bars any attempts to secure money damages from the individual defendants in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("[A]bsent a waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity.") (internal citations omitted). Because Stewart cannot bring claims under Section 1983 against the individual defendants in their official capacity, all his claims against them must be dismissed for lack of jurisdiction.

But even if his claims against the individual defendants were not barred by the Eleventh Amendment, Stewart has still failed to state a claim under Section 1983. That is because he alleges nothing more about each individual defendant than their title, the institution they are affiliated with, and how he believes they can be served. Stewart has not alleged how any individual took part in admissions decisions, whether they were responsible for any admissions policies (he alleges no facts at all about the admissions policies at four of the five UT Medical Schools), or whether they engaged in discrimination. That is not enough.

To state a claim under Section 1983, Stewart needed to plead how "each Government-official defendant, through the official's own *individual* actions, has

---

[9] Stewart recognizes that he cannot bring his Section 1981 and Equal Protection-based claims against the UT Medical Schools, and has only sought relief from the individual defendants for these claims. *See* Doc. 1 ¶¶ 74, 85.

violated the" the law. *Iqbal*, 556 at 676 (emphasis added); *see also Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992) ("[A] plaintiff bringing a section 1983 action must specify the personal involvement of each defendant"); *Jacquez v. Procunier*, 801 F.2d 789, 796 (5th Cir. 1986) ("[T]o successfully plead a cause of action in § 1983 cases, plaintiffs must enunciate a set of facts that illustrate the defendants' participation in the wrong alleged."); *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 983 (10th Cir. 1991) ("A claim seeking personal liability under section 1981 must be predicated on the actor's personal involvement. There must be some affirmative link to causally connect the actor with the discriminatory action.") (internal citations omitted).

Stewart would also have to allege that the individual UT Defendants engaged in *intentional* discrimination. *See, e.g.*, *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."); *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004) ("To state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.") (internal quotation marks and citation omitted); *Manley v. Texas Southern Univ.*, 107 F. Supp. 3d 712, 720 (S.D. Tex. 2015) ("To state a § 1981 claim, a plaintiff must allege facts showing that he or she was the subject of intentional discrimination.") (citing *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997)). That would require Stewart to allege that the individual UT Defendants took a "particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). But given that Stewart has not pleaded any facts about what actions any individual defendant took, much less why they might have taken them (if they even did), he has failed to allege that any defendants engaged in intentional discrimination and his

11

Section 1983 claims against them fail. Thus, even if they were not otherwise barred, Stewart fail to state a claim under Section 1983.

Stewart's failure to offer *any* factual allegations about the individual defendants also dooms any attempt to plead claim for injunctive relief under *Ex parte Young*, if Stewart has tried to plead such a claim.[10] That is because a plaintiff pursuing "an official-capacity equitable claim" under the doctrine must plead "(1) the defendant is a state officer, (2) the complaint seeks injunctive relief for an ongoing violation of federal law, and (3) the defendant state officer bears a sufficiently close connection to the unlawful conduct that a district court can meaningfully redress that injury with an injunction against that officer." *Mack*, 4 F.4th at 311–12.

Stewart only alleges that the individual defendants are state officers. As explained earlier, he cannot allege that there is an *ongoing* violation of federal law because, following the repeal of Regents' Rule 40304, the UT Medical Schools are no longer authorized to consider race in admissions. He only makes conclusory allegations that the UT Medical Schools consider gender in admissions at all, which of course, is not enough to suggest that there is any ongoing violation of federal law. Stewart also failed to allege how any individual defendant "bears a sufficiently close connection" to the allegedly unlawful conduct because he has not alleged that any have both "'the authority to enforce the challenged law' [and] 'a sufficient connection to the enforcement of the challenged act'," which likewise means any attempt to assert a claim under *Ex parte Young* would fail. *Haverkamp v. Linthicum*, 6 F.4th 662, 669-70 (5th Cir. 2021).

For these reasons, Stewart's claims against the individual UT Defendants should be dismissed.

---

[10] Stewart's complaint never mentions *Ex parte Young*.

3. **Stewart's conclusory assertions fail to plausibly allege race or gender based discrimination claims under Title VI, Title IX, Section 1981, or the Equal Protection Clause.**

In his complaint, Stewart offers a few graphs that show the distribution of MCAT scores for admitted students at the UT Medical Schools organized by race and gender, which he contends show that the schools discriminated in admissions. These allegations fall short of what *Twombly* and *Iqbal* require.

Foremost, each of Stewart's claims requires that he allege *intentional* discrimination. *See Alexander v. Sandoval*, 532 U.S. 275, 281 (2001) ("Title VI itself directly reach[es] only instances of intentional discrimination."); *Poloceno v. Dallas Indep. Sch. Dist.*, 826 F. App'x 359, 362 (5th Cir. 2020) ("[O]nly intentional discrimination, not disparate impact, is actionable under Title IX."); *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982) ("[Section] 1981 can be violated only by intentional discrimination"); *Vill. of Arlington Heights*, 429 U.S. at 265 ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."). Stewart does not plausibly allege that any school intentionally discriminated on the basis of race or gender.

Stewart's graphs likewise do not even support an inference that there was intentional discrimination. His comparison of MCAT scores between men and women admitted at the four UT Medical Schools for which he prepared graphs shows near parity. At best, Stewart's graphs of admitted students' MCAT scores organized by race show that the UT Medical Schools accept students from different races with a range of different MCAT scores (including a number of white students who had lower MCAT scores than he did).[11] But the fact that different applicants are admitted with different MCAT scores does not suggest discrimination or show disparate impact. One

---

[11] Additionally, discrimination cannot plausibly be inferred from MCAT scores. As Stewart acknowledges in his complaint many factors are considered in admissions decisions and the UT Medical Schools cannot make admissions decisions based on MCAT scores alone. *See* Tex. Educ. Code § 51.842(b).

reason is that alleging disparate impact requires showing a substantial disparity *between* the racial composition of admitted students *and* the racial composition of the applicant pool—but Stewart's complaint says nothing about the applicant *pool. See Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 650-652 (1989), *superseded by statute on other grounds by* 42 U.S.C. § 2000e-2(k)1, (disparate impact in hiring for noncannery jobs must be shown through a comparison to the "pool of qualified job applicants" for noncannery jobs). Without allegations about the racial or gender composition of the applicant pool (and their attendant qualifications), Stewart cannot show that any admissions policies "bear[] more heavily on one race than another." *Vill. of Arlington Heights*, 429 U.S. at 266; *see also Lewis v. Ascension Par. Sch. Bd.*, 806 F.3d 344, 360 (5th Cir. 2015) ("[Parties may not prove discrimination merely by providing the court with statistical analyses. The statistics proffered must address the crucial question of whether one class is being treated differently from another class that is otherwise similarly situated.") (*quoting Chavez. v. Illinois State Police*, 251 F.3d 612, 638 (7th Cir. 2001)).

Even if Stewart had sufficiently alleged disparate impact, courts routinely dismiss similar claims of race and gender discrimination under Title VI, Title IX or the Equal Protection Clause when all the plaintiff does is allege facts that show disparate impact. *See Poloceno*, 826 F. App'x at 362 ("disparate impact" not actionable under Title IX); *Manley*, 107 F. Supp. 3d at 724 ("disparate impact allegations cannot sustain a Title VI claim"); *id.* at 721 (disparate impact allegations are "not actionable under § 1981, § 1983, or the Equal Protection Clause"); *Priester v. Lowndes County*, 354 F.3d 414, 424 (5th Cir. 2004) ("To state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff 'must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'") (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)).

14

Finally, Stewart has not alleged that *any* of the UT Medical Schools had policies giving gender-based preferences in admissions. Likewise, apart from UTMB, Stewart has not alleged that any of the UT Medical Schools considered race *at all* when making admissions decisions. And for UTMB, Stewart cites a policy that was not in effect when he applied to UTMB and that is no longer in effect today. *See* Appendix at 1-2 (Declaration of P. Banks ¶¶ 5-6). In sum, having failed to plausibly allege that any of the UT Medical Schools considered race or gender in admissions when he applied to them or that they do now, Stewart's claims must be dismissed. *See also Texas Dep't of Hous. & Comm. Affairs v. Inclusive Comms. Proj., Inc.*, 576 U.S. 519, 542 ("[A] disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies creating that disparity").

Because Stewart has not done any more than allege facts suggesting that admitted students of different races have different (but overlapping) ranges of scores and that admitted men and women have similar scores, he has failed to plausibly allege *intentional* discrimination. Additionally, his claims under Title VI, Title IX and the Equal Protection Clause cannot rely on a disparate impact theory, which he has failed to allege in any case. Accordingly, Stewart's Title VI, Title IX, and Equal Protection Clause claims must be dismissed.

## CONCLUSION

For the reasons explained here, the UT Defendants ask that this Court (1) dismiss Stewart's claims seeking declaratory and injunctive relief prohibiting the consideration of race in admissions to the UT Medical Schools as moot (2) dismiss his claims against the individual defendants in their official capacity as barred by the Eleventh Amendment; and (3) dismiss his Title VI, Title IX, Section 1981, and Equal Protection Clause claims based on the consideration of gender and race in admissions for failure to state a claim.

15

Dated: September 12, 2023      Respectfully submitted,

*/s/ Layne E. Kruse*

Layne E. Kruse
   (Texas Bar No. 11742550)
Shauna Johnson Clark
   (Texas Bar No. 00790977)
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: 713-651-5151
Telecopier: 713-651-5246
layne.kruse@nortonrosefulbright.com
shauna.clark@nortonrosefulbright.com

*Attorneys for the University of Texas Defendants*

16

## CERTIFICATE OF SERVICE

I certify that on September 12, 2023, I served a copy of this document on all counsel of record by electronic means.

*/s/ Layne Kruse*
Layne Kruse

17