UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| **George Stewart,** | |
| Plaintiff; | |
| v. | Case No. 5:23-cv-0007-H |
| **Texas Tech University Health Sciences Center, et al.,** | |
| Defendants. | |

## UNIVERSITY OF TEXAS DEFENDANTS' MOTION TO SEVER AND CHANGE VENUE AND BRIEF IN SUPPORT

Layne E. Kruse
Shauna Johnson Clark
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: 713-651-5151
Telecopier: 713-651-5246
layne.kruse@nortonrosefulbright.com
shauna.clark@nortonrosefulbright.com

*Attorneys for University of Texas Defendants*

# TABLE OF CONTENTS

**Page**

Table of Authorities ........................................................................................... ii

Introduction and Background ............................................................................ 1

Argument and Authorities ................................................................................. 3

1.     Stewart's claims against the UT Defendants have been improperly
joined to and should be severed from, his claims against the Texas
Tech Defendants. ................................................................................... 3

     a.     Stewart's claims against the UT Defendants were impermissibly
joined under Federal Rule of Civil Procedure 20. ................................. 4

         i.     Stewart's claims do not arise out of the same transaction
or occurrence. ............................................................. 4

         ii.     Stewart's claims against the UT Defendants do not share
common questions of law or fact with his claims against
the Texas Tech Defendants. ......................................... 6

     b.     Severing Stewart's claims against the UT Defendants avoids
potential prejudice. ............................................................. 8

2.     Stewart's claims against the UT Defendants should be transferred to
the Western District of Texas, Austin Division, because both public
and private interest factors weigh in favor of transfer. ................................. 10

     c.     The Western District of Texas, Austin Division is not only more
convenient for both parties and witnesses, it is also the only
potential common nexus connecting all UT Defendants with
Stewart's claims. ............................................................. 11

     d.     Public interest factors also weigh in favor of transferring the UT
Defendants to the Western District of Texas in Austin...................... 13

Conclusion ....................................................................................................... 16

Certificate of Service........................................................................................ 17

Certificate of Conference .................................................................................. 17

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acevedo v. Allsup's Convenience Stores, Inc.,*
   600 F.3d 516 (5th Cir. 2010) ................................................................ 5, 10

*Alexander v. Sandoval,*
   532 U.S. 275 (2001) ............................................................................... 7

*Allen v. Waller Cty.,*
   472 F. Supp. 3d 351 (S.D. Tex. 2020).................................................... 7

*Bancroft Life & Cas. ICC, Ltd. v. FFD Res. II, LLC,*
   884 F. Supp. 2d 535 (S.D. Tex. 2012).................................................... 4

*Bergmann v. U.S. Dep't of Transp.,*
   710 F. Supp. 2d 65 (D.D.C. 2010) ....................................................... 15

*Brereton v. Commc'ns Satellite Corp.,*
   116 F.R.D. 162 (D.D.C. 1987)............................................................... 8

*Brunet v. United Gas Pipeline Co.,*
   15 F.3d 500 (5th Cir. 1994) ................................................................. 8

*Cont'l Prod. Servs. v. B.H.,*
   No. 6:21-CV-013-H, 2021 WL 3629840 (N.D. Tex. Feb. 26, 2021)....................... 11

*Datto v. Assoc. of Am. Med. Colls.,*
   No. 18-21053-CIV-GAYLES/LOUIS, 2019 WL 12470330 (S.D. Fla.
   Aug. 5, 2019) ............................................................................... 3, 5, 7, 12

*Fisher v. Univ. of Tex.,*
   645 F. Supp. 2d 587 (W.D. Tex. 2009), *aff'd after remand* 758 F.3d
   633 (5th Cir. 2014), *aff'd*, 579 U.S. 365 (2016) ....................................... 13

*Gratz v. Bollinger,*
   539 U.S. 244 (2003) ............................................................................... 3

*Grutter v. Bollinger,*
   539 US 306 (2003) ................................................................................. 3

*United States ex rel. Grynberg v. Alaska Pipeline Co.,*
   1997 WL 33763820 (D.D.C. Mar. 27, 1997)............................................ 4

ii

*Gulf Oil Corp. v. Gilbert*,
    301 U.S. 501 (1947) ........................................................................ 14

*Horne v. Tex. Dep't. of Transp.*,
    No. 4:19-CV-405-KPJ, 2019 WL5550626 (E.D. Tex. Oct. 28, 2019) ...................... 5

*Johnson v. BAE Sys. Land & Armaments, L.P.*,
    2014 WL 1714487 (N.D. Tex. Apr. 30, 2014)........................................................ 3

*Liberty Media Holdings, LLC v. BitTorrent Swarm*,
    277 F.R.D. 672 (S.D. Fla. 2011) ........................................................... 4

*Malibu Media, LLC v. Does 1-28*,
    295 F.R.D. 527 (M.D. Fla. 2012) ....................................................... 7, 9

*McNew v. C.R. Bard*,
    2020 WL 759299 (N.D. Tex. Feb. 14, 2020)........................................ 14

*Miller v. Insulation Contractors, Inc.*,
    608 F. Supp. 2d 97 (D.D.C. 2009) ...................................................... 13

*MK v. Tenet*,
    216 F.R.D. 133 (D.D.C. 2002).......................................................... 8, 9

*Mosley v. Gen. Motors Corp.*,
    497 F.2d 1330 (8th Cir. 1974) .............................................................. 8

*Nor-Tex Agencies, Inc. v. Jones*,
    482 F.2d 1093 (5th Cir. 1973) .............................................................. 6

*Rogers v. Lodge*,
    458 U.S. 613 (1982) ............................................................................ 7

*Spaeth v. Mich. State Univ. Coll. of Law*,
    845 F. Supp. 2d 48 (D.D.C. 2012) ................................................. 6, 7, 8

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) ........................................................................... 11

*Students for Fair Admissions, Inc. v. Presidents & Fellows of Harvard
    College and Students for Fair Admissions, Inc. v. Univ. of N.
    Carolina et al.*,
    143 S. Ct. 2141 (2023) ....................................................................... 3

*Students for Fair Admissions v. University of Texas at Austin*,
    Case No. 1:20-CV-763 (W.D. Tex.)..................................................... 14

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ................................................................. 11

*Wagoneka v. KT&G USA Corp.*,
  No. 4:18-CV-859-ALM-KPJ, 2019 WL 4052484 (E.D. Tex. Aug. 8,
  2019) ...................................................................................................... 6

*United States ex rel. Westrick v. Second Change Body Armor, Inc.*,
  771 F. Supp. 2d 42 (D.D.C. 2001) ........................................................ 13

*Willis v. Cleco Corp.*,
  2011 WL 4443613 (W.D. La. Sept. 22, 2011).................................... 5, 9

*Ysleta del Sur Pueblo v. Nat'l Indian Gaming Comm'n*,
  731 F. Supp. 2d 36 (D.D.C. 2010) .................................................. 11, 14

**RULES AND STATUTES**

28 U.S.C. § 1391(b) ................................................................................... 10

28 U.S.C. §1404................................................................................... 1, 10

42 U.S.C. § 1981 ......................................................................................... 1

42 U.S.C. § 1983........................................................................................ 1

Fed. R. Civ. P. 20 ........................................... 1, 3, 4, 5, 6, 8, 10

Fed. R. Civ. P. 45(c)(1)(A) .................................................................... 12

Fed. R. Civ. P. 21 .................................................... 1, 3, 7, 8, 9, 10

Tex. Educ. Code § 65.01, *et seq.*.................................................... 2, 3

Tex. Educ. Code § 109.001, *et seq.*.............................................. 2, 3, 9

**OTHER AUTHORITIES**

Federal Court Management Statistics...................................................... 14

7 Charles A. Wright & Arther Miller, Fed. Prac. & Proc. § 1683 (3d ed.) .................. 4

Defendants Dell Medical School at The University of Texas at Austin, McGovern Medical School at The University of Texas Health Science Center at Houston, the John Sealy School of Medicine at The University of Texas Medical Branch (UTMB) at Galveston, the Long School of Medicine at The University of Texas Health Science Center at San Antonio, The University of Texas Southwestern Medical Center in Dallas , along with officials of those institutions sued in their official capacities[1] (collectively, "the UT Defendants"), move under Federal Rules of Civil Procedure 20 and 21(a) for severance, and under 28 U.S.C. §1404 for a change in venue. This motion is filed simultaneously with, and in the alternative to, the UT Defendants' motion to dismiss Stewart's claims. Stewart has improperly joined his claims against the UT Defendants in a single suit with his claims against unrelated defendants[2] (the "Texas Tech Defendants"). Accordingly, the Court should sever Stewart's claims against the UT Defendants and transfer them to the Western District of Texas, Austin Division.

## INTRODUCTION AND BACKGROUND

After being denied admission to the six medical schools in this case, George Stewart sued the medical schools that denied him admission, as well as state officials at those schools. He seeks to represent a class of similarly situated white and Asian men, and brings his claims under Title VI, Title IX, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the Fourteenth Amendment's Equal Protection Clause against both the UT Defendants and Texas Tech Defendants. Because Texas Tech University Health Sciences Center ("TTUHSC") was among the medical schools that denied Stewart's

---

[1] The individual UT Defendants are: Jay Hartzell, Claudia Lucchinetti, Steve Smith, Joel Daboub, Giuseppe N. Colasurdo, John Hancock, Margaret C. McNeese, Charles P. Mouton, Jeffrey Susman, Ruth E. Levine, Pierre W. Banks, William L. Henrich, Robert A. Hromas, Belina Chapa Gonzalez, Chiquita Collins, Daniel K. Podolskey, W.P. Andrew Lee, and Leah Schouten.
[2] Defendant medical school Texas Tech University Health Sciences Center, and individual Texas Tech officials Lori Rice-Spearman, Steven Lee Berk, Lindsay Johnson, Hollie Stanton, and Jeri Moravcik.

application for admission, Stewart filed this lawsuit in the Lubbock Division of the Northern District of Texas. Rather than bringing a separate lawsuit or several lawsuits, Stewart joined the UT Defendants, which are five UT System medical schools and various officials at each school. Although Stewart applied to other medical schools within the UT System, he did not sue any additional UT medical schools or related officials. None of the UT medical schools are in Lubbock, each makes their own admissions decisions, and all are governed independently of TTUHSC.

As Stewart's complaint acknowledges, the only defendants who reside in Lubbock – or even anywhere near it – are the Texas Tech Defendants. Doc. 1 ¶¶4 – 8. The UT Defendants, in contrast, are all located more than 300 miles from the Lubbock Division of the Northern District of Texas. Doc 1 ¶¶10-32. Stewart, who graduated from the University of Texas at Austin, is a Dallas resident.

The UT Defendants and the Texas Tech Defendants are unrelated entities. The UT Defendant schools are governed by The University of Texas System Board of Regents, which governs all UT System institutions, including medical schools. Tex. Educ. Code. § 65.01, *et seq.* Similarly, TTUHSC is governed separately by the Board of Regents of the Texas Tech University System. Tex. Educ. Code. § 109.001 *et seq.* To the extent any UT Defendant considered race in evaluating admissions at the time Stewart applied, it did so under the regulation of The University of Texas System Board of Regents' Rule 40304, which provided an option for system institutions to propose race-conscious admissions policies, which if approved by the appropriate officials with the UT System, were subject to further review every five years. Appx. 1. Regents' Rule 40304, which was passed after the Supreme Court's decisions in

*Grutter v. Bollinger*[3] and *Gratz v. Bollinger*,[4] was recently withdrawn following the Supreme Court's decision in *Students for Fair Admissions, Inc. v. Presidents & Fellows of Harvard College and Students for Fair Admissions, Inc. v. Univ. of N. Carolina et al.*, 143 S. Ct. 2141 (2023). This UT Regents' Rule never applied to the Texas Tech Defendants, who have their own Board of Regents and different rules. Tex. Educ. Code. § 109.002. Likewise, Texas Tech's rules and regulations never applied to the UT Defendants. Tex. Educ. Code. § 65.02.

## ARGUMENT AND AUTHORITIES

1.  **Stewart's claims against the UT Defendants have been improperly joined to and should be severed from, his claims against the Texas Tech Defendants.**

Under Fed. R. Civ. P. 20, joinder of multiple defendants is only proper when claims arise out of the same transaction or occurrence, and the claims present common questions of law and fact. Fed. R. Civ. P. 20.

In addition to severance based on misjoinder, courts in the Fifth Circuit also sever parties under Rule 21 when severance would promote judicial economy or chances of settlement, avoid prejudice to one or both parties, or when different witnesses or documentary proof are required. *Johnson v. BAE Sys. Land & Armaments, L.P.*, 2014 WL 1714487, at *35 (N.D. Tex. Apr. 30, 2014). All of these factors are relevant here. The Court should sever Stewart's claims against the UT Defendants, not only because the claims against the UT Defendants and the Texas Tech Defendants do not satisfy Rule 20's requirements, but also because the Rule 21 factors independently weigh in favor of severance. *See Datto v. Assoc. of Am. Med. Colls.*, No. 18-21053-CIV-GAYLES/LOUIS, 2019 WL 12470330, *3 (S.D. Fla. Aug. 5, 2019) (severing plaintiff's claims against numerous medical schools under Rule 21

---

[3] 539 US 306 (2003)
[4] 539 U.S. 244 (2003)

where plaintiff made "no allegation that those schools, aside from using AAMC's test and application, are connected or conspired to discriminate against him").

     *a.*   *Stewart's claims against the UT Defendants were impermissibly joined under Federal Rule of Civil Procedure 20.*

Designed to "promote trial convenience" and efficiency, Rule 20 permits plaintiffs to join multiple defendants in a single action only if:

     (A)    any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; ***and***

     (B)    any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2) (emphasis added); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. 672, 674 (S.D. Fla. 2011). "Both of these requirements must be satisfied in order to sustain party joinder under Rule 20(a)." 7 Charles A. Wright & Arther Miller, Fed. Prac. & Proc. § 1683 (3d ed.); *see also Bancroft Life & Cas. ICC, Ltd. v. FFD Res. II, LLC*, 884 F. Supp. 2d 535, 538 (S.D. Tex. 2012). Stewart cannot satisfy either prong.

     *i.*     *Stewart's claims do not arise out of the same transaction or occurrence.*

Because there is no joint and several liability, Stewart must "show that the cases against the joined defendants arise from the same transaction or series of transactions." *United States ex rel. Grynberg v. Alaska Pipeline Co.*, 1997 WL 33763820, at *1 (D.D.C. Mar. 27, 1997). To satisfy this burden, it is not enough to allege merely that the defendants each committed the same violation of law, without alleging some sort of connection between the defendants. *See, e.g., id.* at *1 ("Plaintiff cannot join defendants who simply engaged in similar types of behavior, but who are otherwise unrelated; some allegation of concerted action between defendants is

required."**)**; *Horne v. Tex. Dep't. of Transp.*, No. 4:19-CV-405-KPJ, 2019 WL5550626, at \*5 (E.D. Tex. Oct. 28, 2019) (stating that for an employment discrimination case, "a series of transactions or occurrences is logically connected when the transactions or occurrences take place in the same workplace location, during the same timeframe, under the same supervisory regime.").

First, Stewart's allegation that he submitted applications to all defendant medical schools does not transform separate applications into "series of transactions or occurrences" under Rule 20. Stewart does not allege that the defendant medical schools or their administrators coordinate regarding admissions decisions, or that those the respective institutions' admissions decisions are made by the same individuals, at the same location, or at the same time. S*ee Willis v. Cleco Corp.,* 2011 WL 4443613, at \*1–2 (W.D. La. Sept. 22, 2011) (severing plaintiffs' employment discrimination claims because they occurred at "different facilities located in different geographic locations," and under the "supervision of different supervisors."). Here, as in *Datto*, while Stewart does not allege facts describing "how and why each University Defendant made the decision to deny Plaintiff admission to its medical school, nothing in the Amended Complaint suggests that these were anything other than individualized decisions." *Datto*, 2019 WL 12470330, at \*3. Accordingly, Stewart's claims that each of the defendant medical schools discriminated against him in its admissions process would require a factual inquiry into each defendant's separate admissions process.

To the extent Stewart seeks to challenge a policy of discrimination common to all defendants, Regents' Rule 40304, which is now withdrawn, applied only to the UT Defendants; it did not apply to Texas Tech Defendants. *See Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516 (5th Cir. 2010) ("assuming arguendo that Allsup's company-wide policies" may satisfy Rule 20's same transaction requirement, denying joinder is still discretionary where "different witnesses and documentary

proof would be required for plaintiffs' claims."). Pursuant to Regents' Rule 40304, any UT Defendant's policy had to be reviewed and approved by the UT System's Office of General Counsel and the Executive Vice Chancellor who oversees the institution before they could be implemented. Appx. 1. Stewart's claims, therefore, against the UT Defendants do not arise out of the same transaction or occurrence as his claims against Texas Tech Defendants, and joinder under Rule 20(a) should not be permitted.

> ii.    *Stewart's claims against the UT Defendants do not share common questions of law or fact with his claims against the Texas Tech Defendants.*

Even if the Court were to consider Stewart's claims against the UT Defendants and Texas Tech Defendants as part of a series of transactions among all defendants, however, those two sets of claims should still be severed because there is no common question of law or fact. Common questions of law and fact exist when claims are based on a violation of the same law and share a "common nucleus" of underlying facts. *See Wagoneka v. KT&G USA Corp.*, No. 4:18-CV-859-ALM-KPJ, 2019 WL 4052484, at *5 (E.D. Tex. Aug. 8, 2019). A common question of fact exists when the facts concerning each of a plaintiff's claims are "inextricably woven together" with the facts supporting other claims. *See Nor-Tex Agencies, Inc. v. Jones*, 482 F.2d 1093, 1100 (5th Cir. 1973); *see also Spaeth v. Mich. State Univ. Coll. of Law*, 845 F. Supp. 2d 48, 54 (D.D.C. 2012) (severing plaintiff's discriminatory hiring claims brought under the same federal statute against multiple law schools for lacking a common question of law or fact).

Here, Stewart claims six medical schools within two different university systems, and numerous officials at each institution, discriminated in admissions. Apparent on the face of Stewart's complaint is that he makes no allegation that each school used the same admissions policy or the same admissions personnel, or were otherwise acting in concert. Far from being "inextricably woven," the facts, if any, that would support Stewart's claims against the UT Defendants and Texas Tech

6

Defendants are distinct and separate. *See Datto*, 2019 WL 12470330, at *3 (severing disability-discrimination claims brought by applicant against twelve medical schools under Fed. R. Civ. P. 21, despite use of common AAMC application); *Spaeth*, 845 F. Supp. 2d at 54 (severing plaintiff's age-discrimination claims brought against multiple law schools where "Spaeth has not alleged that any single person or group of people was involved in the decisions of more than one defendant not to interview or hire him" and "he is the only person common to his claims").

Under applicable anti-discrimination laws, and as explained in the UT Defendants' motion to dismiss, Stewart must either (1) show intentional, individual discrimination on the basis of race, (2) create an inference of intentional discrimination, or (3) challenge a common policy or practice. The evidence for the first and second will differ not only as between the UT Defendants and the Texas Tech Defendants, but also among the UT Defendants. And far from alleging that a common admissions policy governs both the UT Defendants and the Texas Tech Defendants, Stewart's allegations recognize that each institution has its own admissions policy. *E.g.*, Doc. 1 ¶ 49 (discussing UTMB's admissions policy).

The first two categories require highly fact-intensive inquiries that are specific to the institutions and Stewart himself related to admissions standards, protocols, and the intent of the admissions committees. *See e.g.*, *See Alexander v. Sandoval*, 532 U.S. 275, 281 (2001) ("Title VI itself directly reach[es] only instances of intentional discrimination."); *Malibu Media, LLC v. Does 1-28*, 295 F.R.D. 527, 532 (M.D. Fla. 2012) ("A defense of this nature would require unique factual proof as to each Defendant, essentially resulting in mini-trials on the merits having nothing to do with the other Defendants."); *Allen v. Waller Cty.*, 472 F. Supp. 3d 351 (S.D. Tex. 2020) (stating that, like a discriminatory-effect claim, an intentional discrimination claim under Section 2 of the Voting Rights Act is a "fact-intensive inquiry" requiring inquiry into the motivation behind official action) (citing *Rogers v. Lodge*, 458 U.S.

613, 618 (1982)). Thus, Stewart's discrimination claims against the UT Defendants and Texas Tech Defendants do not share common questions of fact.

Further, there is no common policy applicable to both the UT Defendants and Texas Tech Defendants for Stewart to challenge. In contrast, the UT Defendants were all subject to now-withdrawn Regents Rule 40304, which governed optional race-conscious admissions policies at all University of Texas institutions. As explained in the UT Defendants' motion to dismiss, any school within the UT System that wanted to adopt a race-conscious policy was required to submit its plan for review and approval by the University of Texas System's Office of General Counsel and the Executive Vice Chancellor overseeing the institution, both of which are in Austin, Texas.

The only commonality between UT and Texas Tech Defendants is that Stewart is suing them under the same laws because each medical school independently denied his application. That is not enough. *See Spaeth*, 845 F. Supp. 2d at 54 ("[T]he fact that Spaeth's claims are premised on the same legal theory is insufficient for showing that they raise common "question[s] of law or fact."). Therefore, the UT Defendants have been improperly joined in this action with Texas Tech Defendants, and Stewart's claims against them should be severed.

   b. *Severing Stewart's claims against the UT Defendants avoids potential prejudice.*

The Court has broad discretion to sever issues to be tried before it based on equitable considerations, even if Rule 20's requirements for permissive joinder are satisfied. *See* Fed. R. Civ. P. 21; *see also Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994). Finally, "the court should consider whether an order under Rule 21 would prejudice any party, or would result in undue delay." *MK v. Tenet*, 216 F.R.D. 133, 138 (D.D.C. 2002) (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)); *see also Brereton v. Commc'ns Satellite Corp.*, 116 F.R.D. 162,

163 (D.D.C. 1987) (Rule 21 must be read in conjunction with Rule 42(b), which allows the court to sever claims as long as doing so would not result in prejudice). To determine whether severance would result in prejudice, courts may consider whether there is a risk of jury confusion and whether parties would face duplicative evidentiary burdens. *See MK*, 216 F.R.D. at 138; *see also Willis*, 2011 WL 4443613, at *2.

The UT Defendants face a risk of prejudice due to jury confusion from being co-defendants with unrelated defendants governed by a different Board of Regents. Tex. Educ. Code § 109.001, *et seq*. As discussed, the facts required to support the majority of Stewart's claims are individualized and specific to a given institution's policy or admissions decisions at each school to which he applied. *See Malibu Media*, 295 F.R.D. at 532. Moreover, allegations of racial discrimination carry significant risk of reputational harm. Without transfer, the UT Defendants will be put in the difficult position of having to present to a jury nuanced, fact-intensive defenses to identical legal claims against numerous public medical schools. A jury may be inclined to believe that all public medical schools in Texas are commonly governed, even though that is not the case. Given the gravity of discrimination allegations, the UT Defendants risk reputational harm due to the potential for jury confusion.

Severance under Rule 21 poses little to no risk of prejudice to Stewart. Because of the factual differences underlying his claims against the UT Defendants and Texas Tech Defendants, Stewart faces little to no risk of having to present duplicative evidence or witnesses if the claims were severed. At worst, Stewart's duplicated evidence would be limited to *his own credentials as an applicant*. Even if Stewart's burden were greater than the reality, it would not outweigh the risk of prejudice due to jury confusion. *See Willis*, 2011 WL 4443613, at *1–2 (severing discrimination claims "given the significant factual differences," because the undue prejudice of a

single trial far outweighed the burden "of calling a few witnesses in more than one trial.").

Finally, because "misjoinder of parties is not a ground for dismissing an action" under Rule 21 and the UT Defendants do not seek transfer to multiple potential venues, Stewart would simply pursue his claims against the UT Defendants together in a single, separate proceeding. *See Acevedo*, 600 F.3d at 522 (quoting Fed. R. Civ. P. 21). Because severing Stewart's claims against the UT Defendants would avoid prejudice to both parties and there is little, if any, overlapping evidence between the claims, severance is proper under Rule 21, regardless of the Court's determination on the Rule 20 factors.

2.    **Stewart's claims against the UT Defendants should be transferred to the Western District of Texas, Austin Division, because both public and private interest factors weigh in favor of transfer.**

If the Court agrees that the UT Defendants have been improperly joined with Texas Tech Defendants, it should transfer the claims against the UT Defendants to the Austin Division of the Western District of Texas, where a substantial part of the events giving rise to Stewart's claims occurred. In the interest of justice, courts may transfer any civil action "to any other district or division where it might have been brought," for "the convenience of parties and witnesses." *See* 28 U.S.C. § 1404(a). In a suit brought under federal question jurisdiction like this one, venue is proper in any district in which "any defendant resides" or "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b).[5] There can be no dispute that this action could have been brought in the Western District of Texas, where Dell Medical School in Austin and the Long School of Medicine in San Antonio

_____

[5] The existence of venue and propriety of joinder are, of course, separate issues, and the latter is inappropriate here for the reasons discussed above.

both operate and conduct their regular activities, and where the individual defendants related to those schools also reside and work. Doc. 1 ¶¶10-32.

Once this threshold inquiry is met, courts have broad discretion "to adjudicate motions to transfer according to individualized, case-by-case consideration of convenience and fairness." *Ysleta del Sur Pueblo v. Nat'l Indian Gaming Comm'n*, 731 F. Supp. 2d 36, 39 (D.D.C. 2010) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). In exercising that discretion courts weigh several private and public factors. The private factors include: "(1) ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Cont'l Prod. Servs. v. B.H.*, No. 6:21-CV-013-H, 2021 WL 3629840, at *2 (N.D. Tex. Feb. 26, 2021)(quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)). The relevant public factors include: (1) the transferee's familiarity with the governing law; (2) the relative congestion of the courts of the transferor and potential transferee districts; and (3) the local interest in deciding local controversies at home.[6] *Id*.

   c.  *The Western District of Texas, Austin Division is not only more convenient for both parties and witnesses, it is also the only potential common nexus connecting all UT Defendants with Stewart's claims.*

The private factors are easily satisfied in favor of the UT Defendants. Where there is no factual nexus connecting claims against the UT Defendants to those against the Texas Tech Defendants, Stewart's choice of venue must yield to other considerations. Even if the UT Defendants are severed, Stewart will still enjoy his choice of forum for his suit against the Texas Tech Defendants. Further, a significant portion of the claims arose in the Western District of Texas. Not only are two medical

---

[6] The fourth public interest factor, "the avoidance of unnecessary problems of conflict of laws" or application of foreign laws, is inapplicable to this case.

11

school defendants located in the Western District of Texas, Regents' Rule 40304, which previously governed the review process for optional race-conscious admissions policies within the University of Texas System, was passed, implemented, and withdrawn by the UT System Board of Regents, which convenes and has its principal place of business in Austin, Texas. *See* Appx. 4; Appx. 1-2.

The Austin Division of the Western District is the most convenient forum for the UT Defendants. Austin is more centrally located and accessible compared to Lubbock for all individual UT Defendants. Doc. #1 ¶36. Plaintiff's counsel is also located in Austin. Austin is more convenient even for UT Southwestern, which, although located within the Northern District of Texas in Dallas, is more than *100 miles closer* to Austin than it is to Lubbock. The additional time and cost of proceeding with this case in Lubbock, which has no connection to any UT Defendant, is an unnecessary burden given the availability of a more convenient venue that bears a substantial relation to Stewart's claims.

Given the fact-intensive nature of discrimination claims, the availability of testimony from both party and non-party witnesses is critical for both all parties to support their claims and defenses. *See Datto* 2019 WL 12470330, at *3 (severing and transferring discrimination claims against the University of Central Florida from claims against the University of Miami, in part, because "the bulk of witnesses" would be located on UCF's campus in the Middle District of Florida rather than the Southern District.). Austin is a more convenient venue for any witnesses that may provide testimony relevant to Stewart's claims against the UT Defendants, such as the individuals who reviewed Stewart's application or set admissions policies, who are affiliated with one or more of the UT Defendant medical schools or the Board of Regents. Given that *all* UT medical schools are more than 300 miles from Lubbock, any witnesses with knowledge relevant to Stewart's claims against the UT Defendants will likely fall outside subpoena range under Fed. R. Civ. P. 45(c)(1)(A).

12

*see United States ex rel. Westrick v. Second Change Body Armor, Inc.*, 771 F. Supp. 2d 42, 49 (D.D.C. 2001) ("When considering the convenience of witnesses, a court must pay particular attention to whether important witnesses will be available to give live trial testimony."). Moreover, *none* of the evidence needed to support Stewart's claims against the UT Defendants is located in, or even close to, Lubbock.

Given the increased time and cost for both party and non-party witnesses to travel to Lubbock, as well as the unavailability of compulsory process to secure testimony, the first three private interest factors plainly weigh in favor of transfer to the Austin Division as the more convenient venue.

> *d.* *Public interest factors also weigh in favor of transferring the UT Defendants to the Western District of Texas in Austin.*

The first public interest factor, familiarity with governing law, would not bar a transfer. All of Stewart's claims arise under the Equal Protection Clause of the Fourteenth Amendment and various federal antidiscrimination statutes. All federal courts are competent to decide these claims. *See Miller v. Insulation Contractors, Inc.*, 608 F. Supp. 2d 97, 103 (D.D.C. 2009) ("all federal courts are presumed to be equally familiar with the law governing federal statutory claims."). Still, however, the Austin Division has experience with claims similar to those here, having previously adjudicated a challenge to the consideration of race in undergraduate admissions at the University of Texas at Austin. *See Fisher v. Univ. of Tex.*, 645 F. Supp. 2d 587 (W.D. Tex. 2009), *aff'd after remand* 758 F.3d 633 (5th Cir. 2014), *aff'd*, 579 U.S. 365 (2016). In fact, a similar suit challenging the undergraduate admissions policies of the University of Texas at Austin's admissions is currently pending in the Austin

Division of the Western District.[7] *See Students for Fair Admissions v. University of Texas at Austin,* Case No. 1:20-CV-763 (W.D. Tex.).

The second public interest factor, relative court congestion, also weighs in favor of transfer to the Western District, although the difference is not great. According to the June 2023 Federal Court Management Statistics published by the Administrative Office of the United States Courts, the Northern District of Texas has a slightly longer median filing-to-disposition period than the Western District (8.0 to 7.4 months, respectively), which is likely attributable to the higher number of civil filings in the Northern District compared to the Western District (457 to 366, respectively). *See Federal Court Management Statistics, U.S. District Courts – Comparison Within Circuit* (June 2023).[8] Due to the Northern District's demanding civil docket, Northern District courts also have a slightly longer filing-to-trial period compared to the Western District, and a greater percentage of civil cases that are older than three years remaining on their dockets (10.3%, versus 7.8% for Western District Courts).[9]

Austin, its residents, and the courts located therein, also have an interest in the dispute being litigated locally, as "[t]here is a local interest in having localized controversies decided at home." *Ysleta del Sur Pueblo*, 731 F. Supp. 2d at 41 (D.D.C. 2010) (quoting *Gulf Oil Corp. v. Gilbert*, 301 U.S. 501, 509 (1947)); *see also McNew v. C.R. Bard,* 2020 WL 759299, at *3 (N.D. Tex. Feb. 14, 2020) (explaining that the local interest factor tends to favor where the claims arose, but that "the location of a party's principal place of business can also create a strong local interest"). That Stewart's

---

[7] That there is a pending case involving the University of Texas admissions policies in the Austin Division, also supports the fourth private interest factor, making the case "easy, expeditious, and inexpensive." *See McNew*, 2020 WL 759299, at *3) (recognizing that similar pending cases, even without an intent to consolidate, "allow the judge to organize the proceedings to accommodate experts, other witnesses, and counsel.").

[8] Available at, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0630.2023.pdf.

[9] These statistics were published in June 2023, which likely do not account for the impact that the Honorable Judge Lee Yeakel's retirement may have on congestion.

claims arise under federal law "does not mean that the subject of his lawsuit does not present an issue of local controversy." *Bergmann v. U.S. Dep't of Transp.*, 710 F. Supp. 2d 65, 75 (D.D.C. 2010).

Because the policy decisions of the University of Texas System Board of Regents, who convene and hold their principal place of business in Austin, may play a central role in the adjudication of Stewart's claims, the Austin Division of the Western District has a significant local interest in adjudicating the claims locally. *See* UT Defendants' Motion to Dismiss, Doc. [#] at 4-8. Additionally, any UT medical school that implemented an admissions policy in compliance with Rule 40304 was *required* to submit their policy for review and approval by the University of Texas System's Office of General Counsel and the relevant Executive Vice Chancellor, located in Austin, Texas. Appx. 1. In contrast, Texas Tech University's separate Board of Regents presumably meets and makes policy decisions in Lubbock, Texas. If there is a local interest in adjudicating Stewart's discrimination claims against the Texas Tech Defendants in the Lubbock Division where those claims arose, then the Austin Division of the Western District at least has a congruent interest in adjudicating claims against the UT Defendants – where both Dell Medical School and the Board of Regents are located, and where any of the UT medical schools' admissions policies that included an affirmative action component would be approved.

In sum, the public interest factors also favor transfer of the UT Defendants. Considered together with the private interest factors, of which at least three favor transfer, the Court should transfer Stewart's claims against the UT Defendants in the interest of justice.

## CONCLUSION

For the reasons explained here, the UT Defendants ask, in the alternative to its motion to dismiss, that this Court sever Stewart's claims against them and transfer those claims to the Western District of Texas, Austin Division.

Dated: September 12, 2023                Respectfully submitted,


*/s/ Layne E. Kruse*
Layne E. Kruse
    (Texas Bar No. 11742550)
Shauna Johnson Clark
    (Texas Bar No. 00790977)
Norton Rose Fulbright US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: 713-651-5151
Telecopier: 713-651-5246
layne.kruse@nortonrosefulbright.com
shauna.clark@nortonrosefulbright.com


*Attorneys for the University of Texas Defendants*

## CERTIFICATE OF SERVICE

I certify that on September 12, 2023, I served a copy of this document on all counsel of record by electronic means.

/s/ Layne E. Kruse
Layne E. Kruse

## CERTIFICATE OF CONFERENCE

I certify that on September 8, 2023, I conferred with plaintiff's counsel via email about the relief requested in this motion, and confirmed that Plaintiff's counsel is opposed to this motion.

/s/ Layne E. Kruse
Layne E. Kruse

17