UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

|   |   |
|---|---|
| **George Stewart**, on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>**Texas Tech University Health Sciences Center**, et al.,<br><br>    Defendants. | Case No. 5:23-cv-00007-H |

### PLAINTIFF'S BRIEF IN OPPOSITION TO UNIVERSITY OF TEXAS DEFENDANTS' MOTION TO SEVER AND TRANSFER

GENE P. HAMILTON
Virginia Bar No. 80434
Vice-President and General Counsel
REED D. RUBINSTEIN*
D.C. Bar No. 400153
ANDREW J. BLOCK*
Virginia Bar No. 91537
NICHOLAS R. BARRY*
Tennessee Bar No. 031963
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org
reed.rubinstein@aflegal.org
andrew.block@aflegal.org
nicholas.barry@aflegal.org

JONATHAN F. MITCHELL
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law



* admitted *pro hac vice*

*Counsel for Plaintiff and Proposed Class*

## TABLE OF CONTENTS

Table of contents ........................................................................................................i

Table of authorities ...................................................................................................ii

 I. The claims against the defendants are properly joined .................................1

  A. The defendants are permissibly joined under Rule 20 ............................1

   1. Stewart's claims against the defendants arise out of the same "series of transactions or occurrences" ...............................................1

   2. There is at least one question of law or fact common to the claims brought against the UT defendants and the Texas Tech defendants ....................................................................................4

  B. The defendants are permissibly joined under Rule 21 ............................5

 II. The Court should not transfer the claims against the UT defendants to the Western District Of Texas ..................................................................6

Conclusion ................................................................................................................9

Certificate of service................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Accresa Health LLC v. Hint Health Inc.*, No. 4:18-CV-00536, 2019 WL 10960486 (E.D. Tex. May 23, 2019) ........................................................................1

*Lott v. Eastman Kodak Co.*, No. 3:97-CV-2560-P, 1999 WL 242688 (N.D. Tex. Apr. 16, 1999) ..............................................................................................4

*Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970) ..........................................8

*Time, Inc. v. Manning*, 366 F.2d 690 (5th Cir. 1966) ...............................................8

*Von Graffenreid v. Craig*, 246 F. Supp. 2d 553 (N.D. Tex. 2003) ............................7

*Wade v. Minyards Food Stores*, No. CIV.3-03-CV-1403-H, 2003 WL 22718445 (N.D. Tex. Nov. 17, 2003) ...........................................................................1

*Woolf v. Mary Kay Inc.*, 176 F. Supp. 2d 642 (N.D. Tex. 2001) ..............................7

*Young v. Armstrong World Indus., Inc.*, 601 F. Supp. 399 (N.D. Tex. 1984) ..........8

**Statutes**

28 U.S.C. § 1391(b)(1) ................................................................................................6

28 U.S.C. § 1404(a) ....................................................................................................6

**Rules**

Fed. R. Civ. P. 20(a)(2) ...............................................................................................1

Fed. R. Civ. P. 20(a)(2)(A) .........................................................................................1

I. **THE CLAIMS AGAINST THE DEFENDANTS ARE PROPERLY JOINED**

The UT defendants seek severance under both Rule 20 and Rule 21. Neither rule supports their arguments for severance.

### A. The Defendants Are Permissibly Joined Under Rule 20

Rule 20 allows claims against different defendants to be joined in a single action if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Each of these requirements is comfortably satisfied.

#### 1. Stewart's Claims Against The Defendants Arise Out Of The Same "Series Of Transactions Or Occurrences"

The UT defendants deny that Stewart's claims "arise out of the same transaction or occurrence,"[1] but that is not what Rule 20(a)(2) requires. Joinder is also permissible if the claims against the different defendants arise out of the same "*series* of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A). And the test for whether Stewart's claims arise out of the "same . . . series of transactions or occurrences" turns on whether there is a "logical relationship between the claims." *Wade v. Minyards Food Stores*, No. CIV.3-03-CV-1403-H, 2003 WL 22718445, at *1 (N.D. Tex. Nov. 17, 2003); *see also id.* ("In determining whether this [same series of transactions or occurrences] test is met, the Court considers whether there is a logical relationship between the claims."); *Accresa Health LLC v. Hint Health Inc.*, No. 4:18-CV-00536, 2019 WL 10960486, at *9 (E.D. Tex. May 23, 2019) ("[T]he claims arise out of the same transaction, occurrence, or series of transactions or occurrences . . . when there

---

1. UT Defs.' Br., ECF No. 36, at 4 ("Stewart's claims do not arise out of the same transaction or occurrence.").

is some 'logical relationship' between the transactions or occurrences."); *id*. at *8–*9 (citing authorities supporting this view). As explained in Wright & Miller:

> The approach [to Rule 20(a)(2)] taken by many courts is reminiscent of the logical-relationship test, which has been judicially developed as a gloss on the words "transaction or occurrence" used in the compulsory-counterclaim provision in Federal Rule of Civil Procedure 13(a). Utilizing this approach, all logically related events entitling a person to institute a legal action against another typically are regarded as comprising a transaction or occurrence. The use of the logical-relationship test seems particularly consistent with the philosophy underlying the passage in Rule 20 that allows joinder of parties whenever the claims arise out of "the same series of transactions or occurrences." Moreover, the flexibility of this standard enables the federal courts to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding under the provisions of Rule 20.

7 Charles Alan Wright et al., Federal Practice and Procedure § 1653 (3d ed.).

Stewart's claims against the Texas Tech and the UT defendants are logically related to each other for four reasons. First, Stewart has applied to each of the defendant medical schools in the past and intends to re-apply to them in the future. *See* Complaint, ECF No. 1, at ¶ 36, 50. He alleges that all of them discriminated against him on account of his race and sex and that they will do again in the absence of judicial relief. Stewart is pursuing a remedy that will shield him from racial discrimination when he resubmits his medical-school applications and ensure that his application is judged by the same criteria that are used for female or minority applicants. And any future discrimination that Stewart encounters from the defendants' medical schools will be part of the "same series" of transactions because: (1) All of it will be directed at the same person (Stewart); and (2) All of it will adversely affect Stewart's chances of winning admission to medical school. That alone establishes a "logical relationship" between the discriminatory admissions practices of the defendant medical schools.

Second, Stewart is pursuing a damages remedy against the institutional defendants,[2] and each of the six defendants may have contributed to the delay of his medical career. It was the fact that he was rejected from *all six* medical schools that caused Stewart to delay his studies, and the appropriate remedy for this past injury should be litigated in a single proceeding with each of the medical schools as joint defendants. The evidence might show that two or more of the defendant medical schools (Texas Tech plus one or more of the UT defendants) would have admitted Stewart under a colorblind and sex-neutral admissions process. In that situation, the damages would need to be apportioned among the two defendants, or perhaps joint-and-several liability would be imposed. Liability might also require a determination of which medical school Stewart would have attended in the event of multiple admissions officers. Whatever the ultimate outcome, this is enough to show a "logical relationship" among Stewart's claims for damages against the different medical schools, and requiring Stewart to pursuing his claims against the Texas Tech defendants in a separate legal proceeding will create needless and avoidable complications.

Third, all of the defendant medical schools are owned and operated by the state of Texas. That creates a "logical relationship" among Stewart's claims, even though the Texas Tech defendants are part of a separate university system. The UT defendants do not contend that the claims against the UT-affiliated medical schools and their personnel are improperly joined under Rule 20(a)(2), so it is hard to understand why they seem willing to allow separate universities within the UT system to be joined as defendants, while simultaneously insisting that the inclusion of Texas Tech makes it impossible for Stewart's claims to arise from the "same series" of transactions or occurrences. The state of Texas is ultimately responsible for the admissions policies at its

---

2. See Complaint, ECF No. 1, at ¶ 86(f).

state universities, in the same way that UT Systems bears responsibility for the practices of universities within the UT system. This further cements a "logical relationship" among the claims that Stewart has brought against the different defendants. *See Lott v. Eastman Kodak Co.*, No. 3:97-CV-2560-P, 1999 WL 242688, at *3 (N.D. Tex. Apr. 16, 1999) ("[A] pattern or practice of discriminatory conduct . . . can constitute the 'series of transactions or occurrences' required by Rule 20(a).").

Finally, Stewart is suing as a class representative—and he sues on behalf of all white and Asian men who stand "able and ready" to apply for admission to any of the six state medical schools in Texas. *See* Complaint, ECF No. 1, at ¶ 54. Any use of affirmative action in student admissions by any of the six defendant medical schools affects the class, and there is a "logical relationship" among the defendant medical schools' admissions policies because Stewart is pursuing a classwide remedy that will purge the use of race and sex preferences in all of Texas's public medical schools.

### 2. There Is At Least One Question Of Law Or Fact Common To The Claims Brought Against The UT Defendants And The Texas Tech Defendants

There is at least one question of law common to Stewart's claims: Whether (and to what extent) race and sex preferences in student admissions are permissible under federal anti-discrimination law. *See* Complaint, ECF No. 1, at ¶¶ 60–85. This question of law is common to the claims brought against both the UT defendants and the Texas Tech defendants, and the UT defendants do not deny that this question of law is present in each of claims that Stewart is asserting.

The defendants try to deny that Rule 20(a)(2)(B) is satisfied because they insist that a "common question of fact" requires claims that are "inextricably woven together" with the facts supporting other claims. *See* UT Defs.' Br., ECF No. 36, at 6–7. But Stewart does not need to satisfy the "inextricably woven" test because he is relying on common questions of *law*, not fact. Stewart is alleging that race and sex

preferences in student admissions are categorically illegal under federal anti-discrimination law, and that presents a question of law common to the claims asserted against both the UT and Texas Tech defendants.

### B. The Defendants Are Permissibly Joined Under Rule 21

Rule 21 allows "parties" to be "dropped or added" by the Court "on such terms as are just":

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

Fed. R. Civ. P. 21. The UT defendants argue that it would be "just" to sever the claims against them because they claim that could "face a risk of prejudice due to jury confusion." UT Defs.' Br., ECF No. 36, at 9. But the plaintiffs are not demanding a jury trial, and even if there were a jury trial the UT defendants' predictions of prejudice are implausible. They are certainly correct to note that "allegations of racial discrimination carry significant risk of reputations harm,"[3] but it is undisputed that the UT defendants were using race and sex preferences when Mr. Stewart sued them. *See* Regents' Rule 40304, available at https://perma.cc/69YS-RJD8. The UT defendants have not even alleged, let alone shown, that Texas Tech's admissions practices were worse than UT's or more discriminatory, nor have they explained how the UT defendants might suffer guilt-by-association at a joint trial with the Texas Tech defendants. Affirmative action was a near-universal practice at universities before the Supreme Court's ruling in *Students for Fair Admission*, and it strains credulity to think that the UT defendants will suffer prejudice at a trial when its co-defendants (and all universities) were using the same discriminatory policies.

---

3. UT Defs.' Br., ECF No. 36, at 9.

Severance will also significantly increase the costs to Stewart of litigating his claims, as he will need to litigate two separate cases—and possibly in two separate venues. And it will also increase costs to the judiciary, as multiple court proceedings and perhaps multiple trials will occur. The UT defendants do not deny that severance would impose costs on Stewart and tax judicial resources. With costs to Stewart and the judiciary that are certain, and benefits to the UT defendants that are speculative (at best), it would be not be "just" to sever the UT defendants from this proceeding.

## II.   The Court Should Not Transfer The Claims Against The UT Defendants To The Western District Of Texas

The UT defendants' request for transfer depends on this Court's agreeing with their arguments for severance,[4] and the Court should deny the motion to transfer because severance is unwarranted. *See* Part I, *supra*. If, however, the Court grants the UT defendants' motion to sever, it should still deny the motion to transfer.

The UT defendants acknowledge that venue would remain permissible in the Northern District of Texas because UT–Southwestern is located here. *See* 28 U.S.C. § 1391(b)(1). So the UT defendants must satisfy the standard for transfer in 28 U.S.C. § 1404(a), which allows district courts to transfer civil actions "[f]or the convenience of parties and witnesses," and "in the interest of justice." 28 U.S.C. § 1404(a).

That is a tall order, because Stewart will *still* have to litigate his claims against the Texas Tech defendants in the Lubbock Division of the Northern District of Texas even if this Court transfers the remainder of the case to Austin. The UT defendants ignore this inconvenient fact in their brief, and argue as if a transfer to Austin would

---

4.   UT Defs.' Br., ECF No. 36, at 10 ("If the Court agrees that the UT Defendants have been improperly joined with Texas Tech Defendants, it should transfer the claims against the UT Defendants to the Austin Division of the Western District of Texas").

substitute rather than supplement the Lubbock proceedings. But they cannot plausibly maintain that it would be more convenient for Mr. Stewart and the plaintiffs' witnesses to litigate in *both* Lubbock and Austin rather than only in Lubbock. The most important factor in deciding a motion to transfer is the convenience of witnesses. *See Woolf v. Mary Kay Inc.*, 176 F. Supp. 2d 642, 650 (N.D. Tex. 2001) ("The convenience of the witnesses is often regarded as the most important factor to be considered in deciding whether to transfer venue."); *Von Graffenreid v. Craig*, 246 F. Supp. 2d 553, 563 (N.D. Tex. 2003) (same). The proposed transfer to Austin will impose substantial burdens on the plaintiffs' expert and lay witnesses by requiring their involvement in two separate court proceedings and (potentially) two different trials in two different locations. We do not quarrel with the defendants' claim that Austin is more convenient than Lubbock for *their* parties and witnesses, but the Court must consider the overall effects on *all* parties and witnesses, and it cannot ignore the continued existence of the claims that will be left behind to litigate in Lubbock. There are also reasons to question just how much "convenience" the UT defendants will gain by litigating in Austin rather than Lubbock, as Texas is an exceedingly large state and many the UT defendants are located in places such as Dallas, Houston, Galveston, and San Antonio, which are far from both Austin and Lubbock. For many witnesses, travel to Austin will still require a long drive or short plane flight, even though it will be concededly be a shorter trip if proceedings were held in Austin rather than Lubbock.

The public interests factors seem to us a wash. The governing law is federal and there is no reason to think Austin-based judges will have any comparative expertise, as the legal issues surrounding affirmative action have been well rehearsed and should be familiar to any reasonably knowledgeable judge or lawyers. The differences in docket congestions between Western and Northern district are too small to weigh in favor of transfer, and in all events the relevant analysis should turn on congestion in

the Austin and Lubbock divisions rather than the judicial districts as a whole. And the defendants' attempt to characterize this as a "local" dispute that should be resolved in Austin falls flat. The legality of affirmative action and race and sex preferences in student admission is a national issue that has effects everywhere, and Stewart is seeking statewide class relief to enjoin a widespread practice that has long existed at nearly every university in the United States. Austin has no more interest in adjudicating this case than Lubbock or any other city. Finally, the location of Stewart's counsel in Austin[5] is not a permissible or relevant consideration. *See Young v. Armstrong World Indus., Inc.*, 601 F. Supp. 399, 402 (N.D. Tex. 1984) ("[C]onvenience of counsel is not an appropriate consideration").

In sum, the UT defendants' arguments for transfer fall short of overcoming the heavy presumption that should attach to the plaintiff's choice of forum. *See Time, Inc. v. Manning,* 366 F.2d 690, 698 (5th Cir. 1966) ("At the very least, the plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the [venue] should be changed."); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice . . . should not be lightly disturbed.").

---

5. *See* UT Defs.' Br., ECF No. 36, at 12 ("Plaintiff's counsel is also located in Austin.").

## CONCLUSION

The UT defendants' motion for severance and transfer should be denied.

Respectfully submitted.

 /s/ Jonathan F. Mitchell
Gene P. Hamilton                          Jonathan F. Mitchell
Virginia Bar No. 80434                    Texas Bar No. 24075463
Vice-President and General Counsel        Mitchell Law PLLC
Reed D. Rubinstein*                       111 Congress Avenue, Suite 400
D.C. Bar No. 400153                       Austin, Texas 78701
Andrew J. Block*                          (512) 686-3940 (phone)
Virginia Bar No. 91537                    (512) 686-3941 (fax)
Nicholas R. Barry*                        jonathan@mitchell.law
Tennessee Bar No. 031963
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org
reed.rubinstein@aflegal.org
andrew.block@aflegal.org
nicholas.barry@aflegal.org                * admitted *pro hac vice*

Dated: October 17, 2023                   *Counsel for Plaintiff and Proposed Class*

## CERTIFICATE OF SERVICE

I certify that on October 17, 2023, I served this document through CM/ECF upon:

Layne E. Kruse
Shauna Johnson Clark
Norton Rose Fulbright LLP
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
(713) 651-5151 (phone)
(713) 651-5246 (fax)
layne.kruse@nortonrosefulbright.com
shauna.clark@nortonrosefulbright.com

*Counsel for the UT Defendants*

Benjamin S. Walton
Assistant Attorney General
General Litigation Division
Post Office Box 12548
Austin, Texas 78711
(512) 463-2120 (phone)
(512) 320-0667 (fax)
benjamin.walton@oag.texas.gov

*Counsel for the Texas Tech Defendants*

 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Plaintiff and Proposed Class*