UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| **George Stewart,** | |
| Plaintiff; | |
| v. | Case No. 5:23-cv-0007-H |
| **Texas Tech University Health Sciences Center, et al.,** | |
| Defendants. | |

# UNIVERSITY OF TEXAS DEFENDANTS' REPLY IN SUPPORT OF MOTION TO SEVER AND CHANGE VENUE

Layne E. Kruse
Shauna Johnson Clark
Eliot Turner
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: 713-651-5151
Telecopier: 713-651-5246
layne.kruse@nortonrosefulbright.com
shauna.clark@nortonrosefulbright.com
eliot.turner@nortonrosefulbright.com

*Attorneys for University of Texas Defendants*

## TABLE OF CONTENTS

    **Page**

Argument and Authorities ................................................................................................. 1

1. Because Stewart's multiple applications to different medical schools are not a "series of transactions or occurrences," the UT Defendants and Texas Tech Defendants should not be joined in a single suit. .................... 1

2. Severance is just, and Rule 21 does not bar transfer. ...................................... 5

3. Plaintiff's claims against the UT Defendants should be transferred to the Western District of Texas, Austin Division. ................................................ 6

    a. Stewart's choice of venue is owed little deference ................................ 6

    b. The public and private interest factors support transfer of UT Defendants. ........................................................................................... 7

Conclusion ........................................................................................................................ 9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Accresa Health LLC v. Hint Health LLC,*
   2019 WL 10960486 (E.D. Tex. May 23, 2019) ...................................................... 2, 4

*Bowers v. Nat'l Collegiate Athletic Ass'n,*
   346 F.3d 402 (3d Cir. 2003) ................................................................................... 3

*Clark v. Owens,*
   2015 WL 1959184 (S.D. Ga. Apr. 30 2015) ............................................................ 2

*Countryman on Behalf of Upstate New York Pension & Ret. Fund v.*
   *Stein Roe & Farnham,*
   681 F. Supp. 479 (N.D. Ill. 1987) ........................................................................... 7

*Datto v. Assoc. of Am. Med. Colls.,*
   2019 WL 12470330 (S.D. Fla. Aug. 5, 2019) ...................................................... 1, 8

*Demarco v. DIRECTV, LLC,*
   2015 WL 6525900 (D.N.J. Oct. 28, 2015) ............................................................. 4

*Graziose v. Am. Home Prod. Corp.,*
   202 F.R.D. 638 (D. Nev. 2001) ............................................................................. 5

*Horne v. Tex. Dep't. of Transp.,*
   2019 WL 5550626 (E.D. Tex. Oct. 28, 2019) ........................................................ 1

*Kohler v. Midway Land, LLC,*
   2012 WL 12919092 (S.D. Cal. Dec. 4, 2012) ........................................................ 3

*Lott v. Eastman Kodak Co.,*
   1999 WL 242688 (N.D. Tex. Apr. 16, 1999) ......................................................... 1

*McNew v. C.R. Bard,*
   2020 WL 759299 (N.D. Tex. Feb. 14, 2020) ........................................................ 8

*Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO,*
   451 U.S. 77 (1981) ................................................................................................ 3

*In re Radmax, Ltd.,*
   720 F.3d 285 (5th Cir. 2013) ................................................................................. 7

*Robertson v. M/V Cape Hunter,*
   979 F. Supp. 1105, 1109 (S.D. Tex. 1997) ................................................................ 7

*Shutte v. Armco Steel Corp.,*
   431 F.2d 22 (3d Cir. 1970) ........................................................................................ 7

*Spaeth v. Mich. State Univ. Coll. of Law,*
   845 F. Supp. 2d 48 (D.D.C. 2012) ....................................................................... 1, 2

*Students for Fair Admissions v. University of Texas at Austin,*
   Case No. 1:20-CV-763 (W.D. Tex.) ......................................................................... 7

*United States v. Mississippi,*
   380 U.S. 128 (1965) .................................................................................................. 4

*In re Volkswagen AG,*
   371 F.3d 201 (5th Cir. 2004) .................................................................................... 9

*Von Graffenreid v. Craig,*
   246 F. Supp. 2d 553 (N.D. Tex. 2003) .................................................................... 9

*Wade v. Minyards Food Stores,*
   2003 WL 22718445 (N.D. Tex. Nov. 17, 2003) ...................................................... 2

*Woolf v. Mary Kay Inc.,*
   176 F. Supp. 2d 642 (N.D. Tex. 2001) .................................................................... 6

*Wynn v. National Broadcasting Co.,*
   234 F.Supp. 2d 1067 (C.D. Cal. 2002) ............................................................ 2, 3, 4

**Rules and Statutes**

28 U.S.C. §1404 ................................................................................................. 1, 6, 7

Fed. R. Civ. P. 45(c)(1)(A) ...................................................................................... 9

Tex. Educ. Code. §65.01, et seq ............................................................................. 4

Tex. Educ. Code. §109.001, et seq. ........................................................................ 4

The University of Texas (UT) Defendants file this Reply in Support of their Motion to Sever and Change Venue. Because Stewart's claims against the UT Defendants and Texas Tech Defendants have little factual or evidentiary overlap, the defendants are unrelated, and transfer is justified under 28 U.S.C. §1404, Stewart's claims against the UT Defendants should be severed and transferred.

## ARGUMENT AND AUTHORITIES

**1. Because Stewart's multiple applications to different medical schools are not a "series of transactions or occurrences," the UT Defendants and Texas Tech Defendants should not be joined in a single suit.**

Stewart asserts that the defendants are properly joined because the underlying facts are related, arguing that they make up a *series* of transactions or occurrences. *Cf. Horne v. Tex. Dep't. of Transp.*, 2019 WL5550626, at *5 (E.D. Tex. Oct. 28, 2019) (in employment discrimination case, "a series of transactions or occurrences is logically connected when the transactions or occurrences *take place in the same workplace location, during the same timeframe, under the same supervisory regime.*") (emphasis added). Stewart is wrong. also Indeed, Stewart did not even try to distinguish any of the cases cited by the UT Defendants that address similar facts and find joinder of claims like these improper.[1] Stewart also does not cite a single case applying the "logical relationship" standard to join distinct defendants in a lawsuit alleging discrimination claims at different institutions.

Moreover, Stewart's cited joinder cases are easily distinguished. *Lott* involved two plaintiffs who sued a single defendant, not a single plaintiff suing numerous defendants. *See Lott v. Eastman Kodak Co.*, No. 3:97-CV-2560-P, 1999 WL 242688 at *2 (N.D. Tex. Apr. 16, 1999). *Wade* likewise involved a motion to join two plaintiffs.

---

[1] *See, e.g., Spaeth v. Mich. State Univ. Coll. of Law*, 845 F. Supp. 2d 48, 54 (D.D.C. 2012) (denying joinder of defendant universities in discrimination suit); *Datto v. Assoc. of Am. Med. Colls.*, 2019 WL 12470330, at *3 (S.D. Fla. Aug. 5, 2019) (declining to join distinct defendants in discrimination case involving admissions).

*See Wade v. Minyards Food Stores*, 2003 WL 22718445, at *1 (N.D. Tex. Nov. 17, 2003). And *Accresa* involved a motion to allow an amended pleading adding counterclaims against a new entity that allegedly partnered with the plaintiff/counterclaim-defendant in violation of the plaintiff/counterclaim-defendant's contractual obligation to exclusively partner with the defendant/counterclaim plaintiff. *See Accresa Health LLC v. Hint Health, Inc.*, 2019 WL 10960486, at *3-4 & n.6 (E.D. Tex. May 23, 2019). None of these cases involved a factual scenario like the one in this case, in which a plaintiff has sued six separate institutions over their independent decisions to deny him admission.

In any case, none of the arguments Stewart offers for why his claims are related are persuasive. Stewart argues that his claims against all defendants are related because he applied to all of the defendant institutions, all rejected him, they all purportedly discriminated against him, and he wants the same remedy from each. Doc. 45 at 2. Courts, however, have rejected attempts to apply the "logical relationship" in such a manner under facts similar to those of this case. *Spaeth*, 845 F. Supp. at 54 (D.D.C. 2012) (severing discriminatory hiring claims brought by the plaintiff against multiple law schools under the same statute); *Wynn v. Nat'l Broadcasting Co.*, 234 F. Supp. 2d 1067, 1086 (C.D. Cal. 2002) (holding that, absent allegations of concerted action or control, plaintiffs' claims against 50 talent agents and studios for age discrimination did not arise out of a series of transactions or occurrences); *Clark v. Owens*, 2015 WL 1959184, at *5 (S.D. Ga. Apr. 30 2015) (declining to join various officials at three different prisons for similar claims of failure to follow administrative housing policy).

Stewart next claims, without offering any legal support, that the prospect of joint and several liability provides the "logical" relationship necessary for joinder. Doc. 45 at 3. But Stewart did not plead joint and several liability, and he neither alleges nor implies a conspiracy or any concerted action (i.e., an *actual* common policy

2

or practice) among the medical schools in their admissions decisions.[2] *Wynn*, 234 F. Supp. 2d at 1078 (holding in an age discrimination suit brought by writers against 50 different studios and talent agents that their participation in a "common industry is not sufficient to satisfy" the series of transactions or occurrences requirement.). Indeed, Stewart has not made any of the allegations necessary to support joint and several liability, like allegations of conspiracy or common control. *See Kohler v. Midway Land, LLC*, 2012 WL 12919092, at *2 (S.D. Cal. Dec. 4, 2012) (declining to join distinct defendants in disability discrimination suit because simply "visit[ing] these facilities on the same day" does not provide adequate justification to show joint and several liability for actions not within their control). Regardless, Stewart does not cite authority, and we are unaware of any, that Title VI provides for apportionment of damages without an allegation of state-wide policy or common control. Furthermore, we have found no case holding that there is an implied right of contribution under Title VI, and in fact an implied right to contribution has been rejected under other federal discrimination statutes. *Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77, 95 (1981) (no right to contribution under Title VII); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 419 (3d Cir. 2003) (no right to contribution under Title II of the ADA).

Stewart also cannot identify a common policy of intentional discrimination *at each medical school,* let alone a conspiracy among them. Without those allegations, the facts supporting Stewart's claims against the UT Defendants and Texas Tech Defendants do not arise from a "series of transactions or occurrences." *Compare Wynn*, 234 F.Supp. 2d at 1093 (rejecting plaintiffs' attempt to sue unrelated industry

---

[2] Plaintiff asserts that it is "undisputed that the UT defendants were using race and sex preferences," citing to Regents Rule 40304. Rule 40304 merely *allowed* schools to have affirmative action policies in place pursuant to then-controlling Supreme Court precedent. At best, however, Plaintiff identifies a "common policy" that does not apply to Texas Tech Defendants.

defendants for age discrimination, because plaintiffs failed to allege defendants were under any common control sufficient to establish a common policy or practice), *with Demarco v. DIRECTV, LLC*, 2015 WL 6525900, at *5 (D.N.J. Oct. 28, 2015) (permitting joinder of DirecTV and two service provider subcontractors due to the level of control exercised by DirecTV over subcontractors, which was found absent in *Wynn*). Even in *Accresa* – Stewart's sole authority involving joinder of a defendant – the court explicitly cited the plaintiff's conspiracy allegations in allowing joinder. *Accresa Health LLC v. Hint Health LLC,* 2019 WL 10960486, at *n.6 (E.D. Tex. May 23, 2019). Here, by contrast, Stewart has not alleged any conspiracy among the defendant institutions.

Despite the conclusory allegation that affirmative action was "near universal," Stewart only manages to identify a single policy at a single medical school in his Complaint. Doc. 1, ¶ 49. He has not alleged that the UT Defendants and Texas Tech Defendants were "using the same discriminatory policies." *See Wynn*, 234 F. Supp. 2d at 1080 (finding that some actors' success at being hired despite their age by defendants cut against finding a "common policy or practice").

Finally, Stewart hypothesizes that there is a logical relationship that binds UT Defendants and Texas Tech Defendants because they are, he claims, "owned and operated by the state of Texas." That not only glosses over basic facts about the separate governance of the two institutions,[3] but Stewart would still have to have alleged a "state-wide system" or policy designed to discriminate on the basis of race. *United States v. Mississippi*, 380 U.S. 128, 143 (1965) (holding joinder proper for six county registrars as defendants with state Election Commissioners because all acted

---

[3] The Texas Legislature created two separate governance systems for the University of Texas and Texas Tech University. *See e.g.,* Tex. Educ. Code. §65.01, et seq. (establishing The University of Texas System Board of Regents); Tex. Educ. Code. §109.001 et seq. (establishing the Board of Regents of the Texas Tech University System).

4

pursuant to a *common state-wide policy* to keep Black Mississippians from registering to vote). Stewart has alleged no state-wide policy.

Finally, Stewart acknowledges the lack of a common question of fact, but argues this Court should rely on one common question of law on whether race and sex preferences for admissions are permissible. Doc. 45 at 4. But "common issues of law does not mean common issues of an area of the law." *Graziose v. Am. Home Prod. Corp.*, 202 F.R.D. 638, 640 (D. Nev. 2001) (noting that "all plaintiffs could not join together in one large lawsuit, to sue all defendants for Title VII discrimination, just because all their claims involve Title VII discrimination").

**2.    Severance is just, and Rule 21 does not bar transfer.**

Severing Stewart's claims against the UT Defendants would avoid prejudice to Texas Tech and to the UT Defendants. Given the limited amount of overlapping evidence between the claims, severance is proper under Rule 21. Stewart fails to demonstrate that severance would result in undue prejudice to the parties. On the contrary, in a single trial, the risk of jury confusion flows from the lack of evidentiary overlap on similar claims, which would require presentations of unrelated evidence. *See Willis v. Cleco Corp.*, 2011 WL 4443613, at *1–2 (W.D. La. Sept. 22, 2011) (severing discrimination claims "given the significant factual differences," because the undue prejudice of a single trial far outweighed the burden "of calling a few witnesses in more than one trial."). Stewart correctly points out that no party has demanded a jury trial at this time; however, the parties have submitted a deadline of 30 days after the Court's ruling on the motions to dismiss as the deadline to amend the pleadings and have not yet waived the right.

Stewart argues that severance would "significantly" increase costs and prejudice him by requiring him to litigate two cases. Whatever cost increase that might befall Stewart from litigating two cases is marginal at best. In the current case,

5

for example, Stewart has already filed two separate responses to the defendants' motions to dismiss. The cost of filing two briefs in two courts is not "significantly" more than filing two briefs in a single court, especially when dealing with different facts. Regardless, Rule 21 is chiefly concerned with the prejudicial risk to Stewart that would result from presenting duplicative evidence and undue delay. Because the facts needed for Stewart to prove discrimination at each medical school are specific to each medical school, the only overlapping or duplicative evidence is limited to Stewart's own credentials as an applicant, but the burden of presenting that evidence in two cases rather than one is not substantial given that Stewart's claims against all of the defendants will still require him to show how his credentials would have resulted in his admission at each at each institution, which have different standards and class profiles, but for the alleged discrimination.

### 3. Stewart's claims against the UT Defendants should be transferred to the Western District of Texas, Austin Division.

Even if the Court determines that all defendants are permissibly joined under the Rule 20 factors, the Court may still transfer the case to "any district or division where it might have been brought" under 28 U.S.C. §1404(a) "for the convenience of the parties" and "in the interest of justice." As discussed above, because the risk of prejudice or delay resulting from severance is insignificant, if any, Rule 21 independently justifies severance and would not limit transfer under §1404(a). It is well established that §1404(a) provides a distinct mechanism for transfer, even where Plaintiff's choice of venue is proper. *See Woolf v. Mary Kay Inc.*, 176 F. Supp. 2d 642, 651 (N.D. Tex. 2001) (weighing convenience of non-party fact witnesses against valid, enforceable forum selection clause).

*a. Stewart's choice of venue is owed little deference*

Stewart admits he is a resident of Davidson County, Tennessee, per his own civil cover sheet in this case. Appx. at 5. On his application to medical school, Stewart

6

identified his permanent address in Dallas County. Appx. at 2. Although a plaintiff's choice of forum is generally entitled to some deference, Stewart overstates the level of deference owed to a non-resident plaintiff who seeks to be a class representative. *See In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013) (holding trial court erred in denying transfer where "only the plaintiff's choice weighs in favor of denying transfer," "the case has no connection to the transferor forum," and "virtually all" evidence was outside the transferor forum); *Robertson v. M/V Cape Hunter*, 979 F. Supp. 1105, 1109 (S.D. Tex. 1997) (finding plaintiff's choice of forum was "entitled to little or no deference" where plaintiff was not resident of the Galveston Division and no key witnesses resided in the Galveston Division); *Countryman on Behalf of Upstate New York Pension & Ret. Fund v. Stein Roe & Farnham*, 681 F. Supp. 479, 483 (N.D. Ill. 1987) (finding plaintiff's choice of venue is entitled to less deference where plaintiff is a non-resident of the forum, sues "as a class representative," and the claim "did not conclusively arise in the chosen forum."). Here, it is undisputed that Stewart is not a resident of the Northern District of Texas, let alone the Lubbock Division, is suing as a class representative, and there are no key witnesses or evidence related to any of the UT Defendants in Lubbock.[4]

b. *The public and private interest factors support transfer of UT Defendants.*

UT Defendants do not disagree that the public interest factors provide a less compelling justification for transfer than the private interest factors. However, Stewart declares the public interest factors a "wash" without addressing the pending case involving The University of Texas at Austin undergraduate admissions policies in the Western District of Texas's Austin Division, which raises similar issues on the

---

[4] Plaintiff also relies on *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). In *Shutte*, unlike here, the district court failed to determine whether the transferee court would have originally had jurisdiction over co-defendants, which is a requirement of §1404(a).

7

application of the Supreme Court's decision in *SFFA*.[5] This plainly supports the fourth public interest factor. *See McNew v. C.R. Bard,* 2020 WL 759299, at *3 (N.D. Tex. Feb. 14, 2020) (recognizing that similar pending cases, even without an intent to consolidate, "allow the judge to organize the proceedings to accommodate experts, other witnesses, and counsel."). The public interest factors, even if marginal, favor transferring UT Defendants to the Western District of Texas.

The private interest factors weigh decidedly towards transfer for UT Defendants, especially given the fact-intensive nature of discrimination claims and importance of both party and non-party witnesses needed to support the parties' claims and defenses. *See Datto v. Assoc. of Am. Med. Colls.*, 2019 WL 12470330, at *3 (S.D. Fla. Aug. 5, 2019) (severing and transferring discrimination claims against the University of Central Florida from claims against the University of Miami, in part, because "the bulk of witnesses" would be located on UCF's campus in the Middle District rather than the Southern District.).

Plaintiff acknowledges that the Austin Division is more convenient for UT Defendants' witnesses, and presumably, that Lubbock is more convenient for Texas Tech Defendants' witnesses. Plaintiff instead relies on his own inconvenience that could result from litigating his claims against unrelated defendants in two venues, one being his chosen forum to which he has no connection and the other where he recently completed his undergraduate studies and can travel to via a direct flight.[6] Stewart also argues that transfer would be inconvenient for his lay "witnesses," none of whom (or even their roles) are identified in his initial disclosures, briefing, or affidavits. In doing so, Plaintiff skips over the most important aspect of the "witness convenience" factor identified in the cases he cites: that convenience to non-party

---

[5] *See Students for Fair Admissions v. University of Texas at Austin,* Case No. 1:20-CV-763 (W.D. Tex.).
[6] Although there are no non-stop flights from Nashville (BNA) to Lubbock (LBB), there are non-stop flights between Nashville and Austin (AUS). Appx. at 3.

witnesses and availability of compulsory process is the lynchpin of the analysis. *Von Graffenreid v. Craig,* 246 F. Supp. 2d 553, 564 (N.D. Tex. 2003) (granting transfer over forum-selection clause and "minor inconvenience to a party representative" due to lack of compulsory process over non-party witnesses).

The only witness Stewart identified was himself and a potential expert to calculate damages. Given that *all 23* UT Defendants are more than 300 miles from Lubbock, witnesses with knowledge relevant to Stewart's claims against the UT Defendants, including any non-party witnesses identified are almost certain to fall outside of the subpoena range of the Lubbock Division under Fed. R. Civ. P. 45(c)(1)(A). Appx. at 3. Thus, it is not enough for Stewart to simply say that Galveston or Houston are also "far" from Austin, when both are *300 miles closer* to Austin than they are to Lubbock. *See In re Volkswagen AG*, 371 F.3d 201, 204–05 (5th Cir. 2004) (where transfer distance is more than 100 miles, the "factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."). Given the increased time and cost for witnesses to travel to Lubbock and unavailability of compulsory process, the private interest factors remain decidedly in UT Defendants' favor. Considered together with the public interest factors favoring the UT Defendants, the Court should transfer Stewart's claims against the UT Defendants in the interest of justice.

## CONCLUSION

Although Stewart's claims may arise under the same law, he is not entitled to join otherwise unrelated defendants where facts simply do not give rise to a series of transactions or occurrences and lack any significant overlapping evidence. Further, transfer to the Western District of Texas, Austin Division is warranted, because the public and private interest factors weigh heavily in favor of transfer for UT

9

Defendants. The UT Defendants' Motion to Sever and Transfer Venue should be granted.

Dated: November 6, 2023    Respectfully submitted,

*/s/Layne E. Kruse*
Layne E. Kruse
Texas Bar No. 11742550
Shauna Johnson Clark
Texas Bar No. 00790977
Eliot Turner
Texas Bar No. 24066224
Norton Rose Fulbright US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: 713-651-5151
Telecopier: 713-651-5246
layne.kruse@nortonrosefulbright.com
shauna.clark@nortonrosefulbright.com
eliot.turner@nortonrosefulbright.com

*Attorneys for the University of Texas Defendants*

10

## CERTIFICATE OF SERVICE

I certify that on November 6, 2023, I served a copy of this document on all counsel of record by electronic means.

>                    */s/ Layne E. Kruse*
>                    Layne Kruse