UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| **George Stewart**, on behalf of himself and others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>**Texas Tech University Health Sciences Center**; **Lori Rice-Spearman**, in her official capacity as President of Texas Tech University Health Sciences Center; **John C. DeToledo**, in his official capacity as Dean of the School of Medicine at Texas Tech University Health Sciences Center; **Felix Morales**, in his official capacity as Associate Dean for Admissions at the School of Medicine at Texas Tech University Health Sciences Center; **Louis Perez**, in his official capacity as Senior Director of Admissions at the School of Medicine at Texas Tech University Health Sciences Center; **Monica Galindo**, in her official capacity as Director of Admissions at the School of Medicine at Texas Tech University Health Sciences Center,<br><br>        Defendants. | Case No. 5:23-cv-00007-H |

### FIRST AMENDED CLASS-ACTION COMPLAINT

Federal law prohibits universities that accept federal funds from discriminating on account of race. *See* 42 U.S.C. § 2000d (Title VI). Medical schools in Texas are flouting these requirements by using racial preferences in student admissions—a practice that violates the clear and unequivocal text of Title VI and 42 U.S.C. § 1981, as well as the Equal Protection Clause of the Fourteenth Amendment. The plaintiff brings

suit to enjoin these discriminatory practices and to ensure that the defendants comply with their obligations under federal anti-discrimination laws.

## JURISDICTION AND VENUE

1. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2. Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2). Venue is additionally proper because at least one of the defendants resides in this judicial district and all defendants reside in Texas. *See* 28 U.S.C. § 1391(b)(1).

## PARTIES

3. Plaintiff George Stewart is a citizen of Texas.

4. Defendant Texas Tech University Health Sciences Center is located in Lubbock, Texas. It can be served at the Office of General Counsel for the Texas Tech University System, whose address is: System Administration Building, 1508 Knoxville Avenue, Suite 301, Box 42021, Lubbock, Texas 79409-2021.

5. Defendant Lori Rice-Spearman is President of Texas Tech University Health Sciences Center. Dr. Rice-Spearman can be served at the Office of General Counsel for the Texas Tech University System, whose address is: System Administration Building, 1508 Knoxville Avenue, Suite 301, Box 42021, Lubbock, Texas 79409-2021. Dr. Rice-Spearman is sued in her official capacity.

6. Defendant John C. DeToledo is Dean of the School of Medicine at Texas Tech University Health Sciences Center. Dr. DeToledo can be served at the Office of General Counsel for the Texas Tech University System, whose address is: System Administration Building, 1508 Knoxville Avenue, Suite 301, Box 42021, Lubbock, Texas 79409-2021. Dr. DeToledo is sued in his official capacity.

7. Defendant Felix Morales is Associate Dean for Admissions and Student Affairs at the School of Medicine at Texas Tech University Health Sciences Center. Dr. Morales can be served at the Office of General Counsel for the Texas Tech University System, whose address is: System Administration Building, 1508 Knoxville Avenue, Suite 301, Box 42021, Lubbock, Texas 79409-2021. Dr. Morales is sued in his official capacity.

8. Defendant Louis Perez is Senior Director for Admissions and Student Affairs at the School of Medicine at Texas Tech University Health Sciences Center. Dr. Perez can be served at the Office of General Counsel for the Texas Tech University System, whose address is: System Administration Building, 1508 Knoxville Avenue, Suite 301, Box 42021, Lubbock, Texas 79409-2021. Dr. Perez is sued in his official capacity.

9. Defendant Monica Galindo is Director of Admissions at the School of Medicine at Texas Tech University Health Sciences Center. Ms. Galindo can be served at the Office of General Counsel for the Texas Tech University System, whose address is: System Administration Building, 1508 Knoxville Avenue, Suite 301, Box 42021, Lubbock, Texas 79409-2021. Ms. Galindo is sued in her official capacity.

## STATEMENT OF FACTS

10. The School of Medicine at Texas Tech University Health Sciences Center, along with nearly every medical school and university in the United States,[1] discriminates on account of race when admitting students by giving discriminatory preferences to non-Asian racial minorities. This practice, popularly known as "affirmative

---

1. *See* Mark J. Perry, *New Chart Illustrates Graphically the Racial Preferences for Blacks, Hispanics Being Admitted to US Medical Schools*, American Enterprise Institute, available at: https://bit.ly/3Qp0RZQ (last visited on August 17, 2024); *see also* Exhibit 1 (data from the American Association of Medical Colleges showing that the mean GPAs and MCAT scores of black and Hispanic matriculants to U.S. MD-granting medical schools in 2022–23 were significantly lower than the mean GPAs and MCAT scores of white and Asian matriculants).

action," allows applicants with inferior academic credentials to obtain admission at the expense of rejected candidates with better academic credentials.

11.  These racial preferences are illegal under the clear and unambiguous text of Title VI, which prohibits all forms of racial discrimination at medical schools and universities that receive federal funds and makes no exception for diversity-based affirmative-action programs.

12.  They also violate 42 U.S.C. § 1981, which prohibits racial discrimination in contracting and makes no exception for diversity-based affirmative-action programs.

13.  Plaintiff George Stewart grew up in Texas with the desire to study science, become a physician, and serve others with his gifting. He made the sacrifices necessary to excel as a student from an early age and thereafter, graduating from high school with a 4.39/4.0 GPA and from college at the University of Texas at Austin with a 3.96/4.0 unaudited GPA in Biology while also volunteering with various relief and ministry organizations. He worked, interned, and volunteered in medical facilities at MD Anderson Cancer Center in Houston, Neofluidics Laboratory in San Diego, and Baylor University Medical Center in Dallas. He also scored a 511 on his MCAT. He believed he would be a good candidate for the Texas medical schools and for two years applied to medical schools hoping to fulfill his dream and calling to become a physician. Unfortunately, he was denied this opportunity while over 450 lesser qualified minority students, ranging as low as a GPA of 2.82 or an MCAT of 495, were offered admission. The schools to which Mr. Stewart applied included: Texas Tech University Health Sciences Center; Dell Medical School at the University of Texas at Austin; McGovern Medical School at the University of Texas Health Science Center at Houston; John Sealy School of Medicine at the University of Texas Medical Branch at Galveston; Long School of Medicine at the University of Texas Health Science Center at San Antonio; and University of Texas Southwestern Medical Center.

14. After his rejections, Mr. Stewart obtained the admissions data for each of the six medical schools through an open-records request, which revealed the race, sex, grade-point average, and MCAT score of every applicant in the 2021–2022 cycle.

15. The data reveal that the median and mean grade-point averages and MCAT scores of admitted black and Hispanic students are significantly lower than the grade-point averages and MCAT scores of admitted white and Asian students.

16. The data from Texas Tech, for example, reveal that blacks and Hispanics are admitted with much lower MCAT scores than whites or Asians:



## FACTS RELATED TO STANDING

17. Mr. Stewart intends to reapply to the School of Medicine at Texas Tech University Health Sciences Center, and he stands "able and ready" to do so. *See Carney v. Adams*, 141 S. Ct. 493, 499–500 (2020); *Gratz v. Bollinger*, 539 U.S. 244, 261 (2003); *Northeast Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 666 (1993).

18. But the racial preferences that the defendants have established and enforce prevent Mr. Stewart from competing on equal terms with other applicants for admission on account of his race. This inflicts injury in fact. *See Gratz*, 539 U.S. at 261; *Jacksonville*, 508 U.S. at 666.

19. This injury is caused by the defendants' use of racial preferences in student admissions, and it will be redressed by a declaratory judgment and injunction that bars the defendants from considering or discriminating on account of race when admitting students to the medical schools.

## CLASS-ACTION ALLEGATIONS

20. Mr. Stewart brings this class action under Rule 23(b)(2) of the federal rules of civil procedure.

21. The class comprises all whites and Asians who stand "able and ready" to apply for admission to the School of Medicine at Texas Tech University Health Sciences Center.

22. The number of persons in the class makes joinder of the individual class members impractical.

23. There are questions of law common to the class. All class members stand able and ready to apply for admission to the School of Medicine at Texas Tech University Health Sciences Center, yet each will encounter discrimination on account of their race unless the defendants are enjoined from implementing their discriminatory admissions practices. The common legal questions are whether the defendants' discriminatory admissions policies violate Title VI, 42 U.S.C. § 1981, or the Equal Protection Clause.

24. Mr. Stewart's claims are typical of other members of the class. Each class member will face the same type of racial discrimination—discrimination in favor of

non-Asian racial minorities and against whites and Asians—when they apply to the School of Medicine at Texas Tech University Health Sciences Center.

25.   Mr. Stewart adequately represents the interests of the class, and he has no interests antagonistic to the class.

26.   A class action is appropriate under Rule 23(b)(2) because the defendants are acting on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

### FIRST CLAIM FOR RELIEF—VIOLATIONS OF TITLE VI

27.   Each of the defendants is violating Title VI by discriminating in favor of non-Asian minority applicants for admission and against whites and Asians.

28.   The School of Medicine at Texas Tech University Health Sciences Center is a "program or activity" that "receives Federal financial assistance" within the meaning of Title VI.

29.   Mr. Stewart therefore seeks declaratory and injunctive relief that prohibits the defendants from considering or discriminating on account of race any way in student admissions, and that compels the defendants to select applicants for admission in a color-blind and race-neutral manner.

30.   Mr. Stewart seeks this relief under Title VI, 42 U.S.C. § 1983, and any other law that might supply a cause of action for the requested relief.

31.   Mr. Stewart seeks this relief against each of the named defendants, including the institutional defendants.

32.   The text of Title VI makes no exceptions for "compelling state interests," "student-body diversity," or race-based affirmative-action programs. It prohibits *all* forms of racial discrimination at institutions that receive federal funds—regardless of whether that racial discrimination is independently prohibited by the Equal Protection Clause.

33. If the Court concludes that *Grutter*'s interpretation of the Equal Protection Clause should somehow control the interpretation of Title VI, the defendants' affirmative-action programs are impermissible even under *Grutter* because: (1) They are not limited in time, *see Grutter v. Bollinger*, 539 U.S. 306, 342 (2003) ("[R]ace-conscious admissions policies must be limited in time"); *id.* at 351 (Thomas, J., concurring in part and dissenting in part) ("I agree with the Court's holding that racial discrimination in higher education admissions will be illegal in 25 years."); (2) The defendants failed to adequately consider race-neutral alternatives to achieve diversity, *see Grutter*, 539 U.S. 306, 339 (2003) ("Narrow tailoring . . . require[s] serious, good faith consideration of workable race-neutral alternatives that will achieve the diversity the university seeks."); (3) The defendants are using quotas and racial balancing to ensure a minimum number of black and Hispanic matriculants, *see Grutter*, 539 U.S. at 328 ("[A] race-conscious admissions program cannot use a quota system"); *id.* at 330 ("[O]utright racial balancing . . . is patently unconstitutional"); and (4) The defendants' use of racial preferences is not narrowly tailored to advance the supposedly "compelling" interest of student-body diversity.

34. Mr. Stewart also brings suit to seek the overruling of *Grutter* and *Fisher v. University of Texas at Austin*, 579 U.S. 365 (2016), and he respectfully preserves for appeal his claim that *Grutter* and *Fisher* should be overruled.

## SECOND CLAIM FOR RELIEF—VIOLATIONS OF 42 U.S.C. § 1981

35. 42 U.S.C. § 1981(a) guarantees individuals the same right to make and enforce contracts without regard to race. *See* 42 U.S.C. § 1981(a) ("All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens").

36. 42 U.S.C. § 1981(a) protects whites (and Asians) on the same terms that it protects "underrepresented" racial minorities. *See McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 295 (1976) ("[T]he Act was meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race.").

37. The individual defendants are violating 42 U.S.C. § 1981(a) by discriminating in favor of non-Asian racial minorities in student admissions, and against whites and Asians.

38. Mr. Stewart therefore seeks declaratory and injunctive relief that prohibits the individual defendants from considering or discriminating on account of race in any way in student admissions, and that compels the defendants to select applicants for admission in a color-blind and race-neutral manner.

39. Mr. Stewart seeks this relief under 42 U.S.C. § 1983, as well as the implied right of action that the Supreme Court has recognized to enforce 42 U.S.C. § 1981(a), and any other law that might supply a cause of action for the requested relief. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459–60 (1975).

40. Mr. Stewart seeks this relief only against the individual defendants, and not against the institutional defendants, as 42 U.S.C. § 1981 neither abrogates nor waives a state institution's sovereign immunity from suit. *See Sessions v. Rusk State Hospital*, 648 F.2d 1066 (5th Cir. 1981) ("Section 1981 contains no congressional waiver of the state's eleventh amendment immunity.").

41. The text of 42 U.S.C. § 1981(a) makes no exceptions for "compelling state interests," "student-body diversity," or race-based affirmative-action programs. It prohibits *all* forms of racial discrimination in contracting—regardless of whether that racial discrimination is independently prohibited by the Equal Protection Clause.

42. If the Court concludes that *Grutter*'s interpretation of the Equal Protection Clause should somehow control the interpretation of 42 U.S.C. § 1981(a), the defendants' affirmative-action programs are impermissible even under *Grutter* because: (1) They are not limited in time, *see Grutter v. Bollinger*, 539 U.S. 306, 342 (2003) ("[R]ace-conscious admissions policies must be limited in time"); *id.* at 351 (Thomas, J., concurring in part and dissenting in part) ("I agree with the Court's holding that racial discrimination in higher education admissions will be illegal in 25 years."); (2) The defendants failed to adequately consider race-neutral alternatives to achieve diversity, *see Grutter*, 539 U.S. 306, 339 (2003) ("Narrow tailoring . . . require[s] serious, good faith consideration of workable race-neutral alternatives that will achieve the diversity the university seeks."); (3) The defendants are using quotas and racial balancing to ensure a minimum number of black and Hispanic matriculants, *see Grutter*, 539 U.S. at 328 ("[A] race-conscious admissions program cannot use a quota system"); *id.* at 330 ("[O]utright racial balancing . . . is patently unconstitutional"); and (4) The defendants' use of racial preferences is not narrowly tailored to advance the supposedly "compelling" interest of student-body diversity.

43. Mr. Stewart also brings suit to seek the overruling of *Grutter* and *Fisher v. University of Texas at Austin*, 579 U.S. 365 (2016), and he respectfully preserves for appeal his claim that *Grutter* and *Fisher* should be overruled.

**THIRD CLAIM FOR RELIEF—EQUAL PROTECTION CLAUSE**

44. As a public institution, the School of Medicine at Texas Tech University Health Sciences Center is subject to the commands of the Equal Protection Clause, which prohibits state universities or their components from denying to any person the equal protection of the laws.

45. The Supreme Court has held that the Equal Protection Clause prohibits racial discrimination by state universities in all but the most compelling situations. *See*

*Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181, 207 (2023).

46. The defendants' use of racial preferences in student admissions is incompatible with the Equal Protection Clause as interpreted in *Students for Fair Admissions.*

47. The defendants' racial preferences are also incompatible with *Grutter v. Bollinger*, 539 U.S. 306 (2003), and *Fisher v. University of Texas at Austin*, 579 U.S. 365 (2016), because: (1) They are not limited in time, *see Grutter v. Bollinger*, 539 U.S. 306, 342 (2003) ("[R]ace-conscious admissions policies must be limited in time"); *id*. at 351 (Thomas, J., concurring in part and dissenting in part) ("I agree with the Court's holding that racial discrimination in higher education admissions will be illegal in 25 years."); (2) The defendants failed to adequately consider race-neutral alternatives to achieve diversity, *see Grutter*, 539 U.S. 306, 339 (2003) ("Narrow tailoring . . . require[s] serious, good faith consideration of workable race-neutral alternatives that will achieve the diversity the university seeks."); (3) The defendants are using quotas and racial balancing to ensure a minimum number of black and Hispanic matriculants, *see Grutter*, 539 U.S. at 328 ("[A] race-conscious admissions program cannot use a quota system"); *id*. at 330 ("[O]utright racial balancing . . . is patently unconstitutional"); and (4) The defendants' use of racial preferences is not narrowly tailored to advance the supposedly "compelling" interest of student-body diversity.

48. Even if the medical schools' affirmative-action programs were consistent with *Grutter* and *Fisher*, they would remain illegal under the text of Title VI and 42 U.S.C. § 1981, which categorically prohibit racial discrimination with no caveats or allowances for "compelling interests, "student body diversity," or anything else.

49. And if the Court somehow concludes that the medical schools' affirmative-action programs are allowable under *Grutter* and *Fisher*, then Mr. Stewart will respectfully seek the overruling or reconsideration of *Grutter* and *Fisher* on appeal.

50. Mr. Stewart therefore seeks declaratory and injunctive relief that prohibits the defendants from considering or discriminating on account of race in any way in student admissions, and that compels the defendants to select applicants for admission in a color-blind manner.

51. Mr. Stewart seeks this relief under 42 U.S.C. § 1983 and any other law that might supply a cause of action for the requested relief.

52. Mr. Stewart seeks this relief only against the individual defendants, and not against the institutional defendants, as 42 U.S.C. § 1983 authorizes lawsuits only against "persons" and not states or state institutions. *See Will v. Michigan Dep't of Police*, 491 U.S. 58, 64–71 (1989) (a state is not a "person" under 42 U.S.C. § 1983).

## DEMAND FOR RELIEF

53. Mr. Stewart respectfully requests that the court:

   a. certify the class described in paragraph 21;

   b. declare that each of the defendants is violating Title VI by discriminating in favor of non-Asian racial minorities in student admissions;

   c. declare that the individual defendants (but not the institutional defendants) are violating 42 U.S.C. § 1981(a) and the Equal Protection Clause by discriminating in favor of non-Asian racial minorities in student admissions;

   d. permanently enjoin the defendants from considering race in student admissions;

   e. permanently enjoin the defendants from asking or allowing an applicant for admission to reveal their race;

   f. enter an award of nominal, compensatory, and punitive damages;

    g.    appoint a court monitor to oversee all decisions relating to the defendants' admission of students to ensure that these decisions are free from racial discrimination of any sort;

    h.    appoint a court monitor to oversee any "diversity office" that may exist at Texas Tech University Health Sciences Center to ensure that it does not aid or abet violations of the nation's civil-rights laws;

    i.    award costs and attorneys' fees;

    j.    grant all other relief that the Court deems just, proper, or equitable.

Respectfully submitted.

/s/ Jonathan F. Mitchell

| | |
|---|---|
| GENE P. HAMILTON<br>Virginia Bar No. 80434<br>Vice-President and General Counsel<br>REED D. RUBINSTEIN*<br>D.C. Bar No. 400153<br>ANDREW J. BLOCK*<br>Virginia Bar No. 91537<br>NICHOLAS R. BARRY*<br>Tennessee Bar No. 031963<br>America First Legal Foundation<br>300 Independence Avenue SE<br>Washington, DC 20003<br>(202) 964-3721<br>gene.hamilton@aflegal.org<br>reed.rubinstein@aflegal.org<br>andrew.block@aflegal.org<br>nicholas.barry@aflegal.org<br><br>Dated: August 17, 2024 | JONATHAN F. MITCHELL<br>Texas Bar No. 24075463<br>Mitchell Law PLLC<br>111 Congress Avenue, Suite 400<br>Austin, Texas 78701<br>(512) 686-3940 (phone)<br>(512) 686-3941 (fax)<br>jonathan@mitchell.law<br><br><br><br><br><br>* admitted *pro hac vice*<br><br>*Counsel for Plaintiff<br>and Proposed Class* |

## CERTIFICATE OF SERVICE

  I certify that on August 17, 2024, I served this document through CM/ECF upon:

BENJAMIN S. WALTON
Assistant Attorney General
General Litigation Division
Post Office Box 12548
Austin, Texas 78711
(512) 463-2120 (phone)
(512) 320-0667 (fax)
benjamin.walton@oag.texas.gov

*Counsel for Defendants*

                 /s/ Jonathan F. Mitchell
                JONATHAN F. MITCHELL
                *Counsel for Plaintiff and Proposed Class*