UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| GEORGE STEWART,<br><br>    Plaintiff,<br><br>v.<br><br>TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER, et al.,<br><br>    Defendants. | No. 5:23-CV-007-H |

## ORDER DENYING MOTION TO EXTEND DEADLINES

Before the Court is the plaintiff's Opposed Motion to Extend Deadlines to Serve Expert Designations And Reports (Dkt. No. 67). For the reasons that follow, the motion is denied. In short, the plaintiff has shown neither good cause nor excusable neglect for his failure to timely file his expert designations and reports. *See* Fed. R. Civ. P. 6(b). The plaintiff asks the Court—56 days after the expiration of the expert-designation deadline—to extend the deadline almost three months beyond the original date. The plaintiff provides no valid excuse in his motion for his failure to timely file his expert designations and reports. Granting the opposed motion would prejudice the defendants; it would also adversely impact and delay an almost two-year-old case for which both sides have had ample time to prepare.

1.  **Procedural Background**

The plaintiff, George Stewart, filed this case—alleging racial and gender discrimination in the admissions processes of six medical schools in Texas—on January 10, 2023. Dkt. No. 1. The Court issued its Scheduling Order on November 9, 2023. Dkt. No. 52. The Scheduling Order set a trial date of June 9, 2025, a dispositive-motions deadline of

February 7, 2025, and a deadline for initial expert designations and reports of August 20, 2024. *Id.* at 1.

On July 17, 2024, the Court severed or dismissed several of the plaintiff's claims, leaving only the race-based claims against the Texas Tech defendants remaining. Dkt. No. 57. On August 17, 2024, the plaintiff filed his first amended complaint against the remaining defendants. Dkt. No. 60. The August 20 deadline to designate experts came and went. The defendants answered the amended complaint on August 30, 2024 (Dkt. No. 62), and the Court issued its Amended Scheduling Order on September 3, 2024 (Dkt. No. 63). The Amended Scheduling Order left most of the original Scheduling Order's deadlines undisturbed. *Compare* Dkt. No. 63 at 1, *with* Dkt. No. 52 at 1. In particular, the trial date, dispositive-motions deadline, and expert-designation deadline all remained the same.

On September 16, 2024, the defendants filed their unopposed motion for a trial continuance. Dkt. No. 64. In it, the defendants represented to the Court that counsel for the defendants, Benjamin Walton, would be on medical leave for approximately three months and requested to shift dates and deadlines—including the trial date—approximately four months. *Id.* at 2–3. The Court denied the motion. Dkt. No. 65. In its Order, the Court noted that "this case has been pending for almost two years," that "[d]espite other claims being dismissed or transferred, counsel for both sides have had ample time to study the case and prepare for trial," and that "the Texas Attorney General's Office has other qualified attorneys to assist and fill in during counsel's temporary absence." *Id.* at 2. As a result, the defendants filed a notice of appearance of co-counsel, in which Assistant Attorney General Joseph Keeney appeared to assist Mr. Walton. Dkt. No. 66.

2

On October 15, 2024—56 days after the August 20 deadline—the plaintiff filed his Opposed Motion to Extend Deadlines to Serve Expert Designations And Reports. Dkt. No. 67. The Court ordered the defendants to respond within seven days. Dkt. No. 68. The defendants responded, and the motion is ripe for review. Dkt. No. 69.

**2.    Legal Standards**

"When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b); *see also* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). The movant bears the heavy burden of demonstrating both excusable neglect and good cause. *Hill v. First Tennessee Bank, N.A.*, No. 3:17-CV-1298-L, 2018 WL 2427146, at *1 (N.D. Tex. May 30, 2018); *cf. In re Chinese Mfg. Drywall Prods. Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014) (Under Rule 60(b), "the defendant has the burden to convince the court that its neglect was excusable, rather than willful, by a preponderance of the evidence.").

**3.    Analysis**

    **A.    Stewart has failed to demonstrate excusable neglect.**

Stewart has failed to show he missed the deadline for expert designations due to excusable neglect. When evaluating excusable neglect, the Court must consider "the danger of prejudice to the [non-movant], the length of delay and its potential impact on the judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 161 n.8 (5th Cir. 2006) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395–97 (1993)). Excusable neglect is an "elastic concept";

deciding what constitutes excusable neglect is, at is core, an equitable determination. *McCarty v. Thaler*, 376 F. App'x 442, 444 (5th Cir. 2010) (quoting *Pioneer*, 507 U.S. at 392).

Extensions of time for requests filed after the deadline "may only be granted upon a finding of excusable neglect." *Id.* at 443. Without "an affirmative showing . . . of excusable neglect according to Rule 6(b), a court does not abuse its discretion when it refuses out-of-time [filings]." *Adams*, 465 F.3d at 161 n.6 (citing *Bernhardt v. Richardson-Merrell, Inc.*, 892 F.2d 440, 444 (5th. Cir. 1990)); *McCarty*, 376 F. App'x at 443 (citing *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990)).

### i. Stewart has failed to provide a valid reason for the delay.

Here, Stewart provides no valid excuse for why he did not designate experts or request an extension of the deadline before August 20. Stewart's failure to provide a valid reason for the delay weighs most heavily with the Court. *See Silivanch v. Celebrity Cruises*, 333 F.3d 355, 366 (2d Cir. 2003); *Hosp. del Maestro v. NLRB*, 263 F.3d 173, 175 (1st Cir. 2001) (quoting *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000)) ("The four *Pioneer* factors do not carry equal weight; the excuse given for the late filing must have the greatest import."). Stewart asserts that "[c]ounsel did not prepare an expert report while the motions to dismiss were pending because they did not know which claims (if any) would survive." Dkt. No. 67 at 1. As the defendants point out, this is a questionable excuse. *See* Dkt. No. 69 at 3. Pending motions to dismiss are no justification for inaction because "parties routinely move to dismiss claims, and the Court will not stay the factual development of those cases pending resolution of dismissal motions." Dkt. No. 42 at 1. Even if this were a valid excuse, it still does not explain why Stewart neglected to file his

4

expert designations in the 34 days between the Court's ruling on the motions to dismiss (July 17) and the expert-designation deadline (August 20). *See* Dkt. No. 69 at 3–4.

Additionally, the defendants are correct that Stewart's framing of the Amended Scheduling Order's timeline is overstated. *See id.* at 4. Stewart implies that the deadline for initial expert designations and reports was unfairly set 14 days before the Amended Scheduling Order was even issued. *See* Dkt. No. 67 at 1–2. But "what Stewart obscures with this framing is the fact that the Court first set the August 20, 2024, deadline over *nine months earlier*—in its initial Scheduling Order entered on November 9, 2023." Dkt. No. 69 at 4 (emphasis in original).

Although he provided no cognizable reason for the failure to seek an extension, the Court recognizes that counsel for Stewart is a busy attorney whose services are in high demand. Occasional oversights and mistakes are inevitable even for the best attorneys, and the Court is sympathetic if simple oversight was the reason for this delay. But even this hypothetical explanation "does little to demonstrate excusable neglect" under Fifth Circuit precedent. *Draper v. KK Ford, LP*, 196 F. App'x 264, 265 (5th Cir. 2006). "A busy practice does not constitute excusable neglect." *Id.* And, if anything, counsel's considerable skill and experience weigh against finding his neglect excusable here.

In sum, Stewart has shown no valid reason for his 56-day delay in filing expert designations and reports—let alone one outside of his reasonable control.

> ii. **Stewart has failed to demonstrate that the other factors weigh in his favor.**

Stewart also fails to demonstrate that his request for a three-month extension of the deadline would not prejudice the defendants or adversely delay the proceedings. Although Stewart "does not provide sufficient information for the Court to determine good faith," the

5

defendants do not allege bad faith, and the Court finds no indication of bad faith here. Dkt. No. 69 at 5.

However, the extension would adversely affect the proceedings and delay the case. The Court recently denied the defendants' motion to shift the trial date four months because "this case has been pending for almost two years" and the Court will not postpone the trial date except for "exceptional circumstances." Dkt. No. 65. The Court finds that granting Stewart's motion to extend the expert deadline three months would adversely impact the judicial proceedings by likely forcing the Court to continue the trial date. Because no exceptional circumstances exist here, the Court denies Stewart's motion for the same reasons it denied the defendants' motion for a continuance (Dkt. No. 65)—namely, because it would adversely delay a two-year-old case for which "counsel for both sides have had ample time to study . . . and prepare." *Id.* at 2.

Finally, the defendants argue they would be prejudiced by being forced to quickly depose Stewart's experts and designate rebuttal experts over the holiday season. Dkt. No. 69 at 6. The defendants also argue that they would be prejudiced by simultaneously having to finish discovery and prepare a summary judgment motion with a new attorney. *Id.* The Court agrees. The Court finds that the only way to avoid such prejudice would be to shift all the subsequent dates in the Amended Scheduling Order, including the trial date. *See id.* at 7 (arguing "further extensions would simply result in the pretrial deadlines running up against the trial date, prejudicing the Defendants"). But "[t]he trial date will not be postponed or continued except on written motion establishing exceptional circumstances." Dkt. No. 63 at 2. No exceptional circumstances exist here.

In sum—even if the Court weighed the dangers of prejudice and delay equally to the excuse for late filing—these two excusable-neglect factors also weigh against granting Stewart's motion. Doing so would disrupt the Court's Amended Scheduling Order, prejudice the defendants, and likely force a postponement of the trial date.

### B. Stewart has also failed to demonstrate good cause.

Stewart has also failed to demonstrate good cause. The factors to show good cause are similar to those for excusable neglect.

When evaluating good cause, the court must consider "(1) the explanation for the failure to [timely designate an expert]; (2) the importance of the [expert] testimony; (3) potential prejudice in allowing the [expert] testimony; and (4) the availability of a continuance to cure such prejudice." *Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 257 (5th Cir. 1997) (quoting *Geiserman*, 893 F.2d at 791).

As explained above, Stewart has not provided a valid explanation for the failure to timely designate an expert. Granting Stewart's motion would result in prejudice to the defendants, and further continuances are unfeasible given this case's age and a trial date that has been set for almost a year.

As to the remaining factor regarding the importance of expert testimony, Stewart has failed to show how this might weigh in his favor. As the defendants argue, if Stewarts seeks to use experts to explain the statistics cited in his complaint, he "was not blindsided by any new development[s]" in the case. Dkt. No. 69 at 5. Nothing relevant to the necessity or desirability of an expert witness has changed since Stewart filed his complaint. Stewart has been "on notice of the desirability of an expert since the outset of the case." *Id*.

7

In sum, having already failed to show excusable neglect, the Court finds it unnecessary to exhaustively analyze Stewart's failure to show good cause. Nevertheless, Stewart's motion offers the Court no explanation—except possibly inadvertence—for his failure to timely designate an expert and file an expert report. Because mere inadvertence—even when there is no prejudice to the non-movant—is insufficient to establish good cause, the Court concludes that Stewart has not shown good cause here. *See Akpan v. United States*, No. H-16-2981, 2017 WL 6527427, at *2 (S.D. Tex. Dec. 21, 2017).

**4.     Conclusion**

In conclusion, the Court finds that Stewart has failed to meet his burden as the movant to demonstrate good cause and excusable neglect. Therefore, the Court denies the plaintiff's Opposed Motion to Extend Deadlines to Serve Expert Designations And Reports (Dkt. No. 67). Trial remains set for June 9, 2025, and all other deadlines in the Court's Amended Scheduling Order (Dkt. No. 63) remain unchanged.

So ordered on November 1, 2024.

> JAMES WESLEY HENDRIX
> UNITED STATES DISTRICT JUDGE